**UNITED STATES, Appellant,**

v.

**Anthony HILBERT, 089 54 6698, Personnelman Second Class (E–5), U.S. Navy, Appellee.**

Misc. No. 85–25.

U.S. Navy-Marine Corps Court of Military Review.

13 March 1986.

LCDR DAVID A. SABOT, JAGC, USN, Appellate Government Counsel.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT GARY K. VAN METER, JAGC, USNR, Appellate Defense Counsel.

Before KERCHEVAL, Senior Judge, and GRANT and RAPP, JJ.

GRANT, Judge:

The appellee was arraigned on a single specification of wrongfully using marijuana in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. At an Article 39(a), 10 U.S.C. § 839(a) session, the appellee moved to suppress his "urine sample and all lab reports, testimony and other evidence deriving therefrom," on grounds the urinalysis testing in which he participated was not authorized at a second echelon level as required by OPNAVINST 5350.4, Enclosure (4), paragraph 6b(1) (OPNAVINST)[1]. The trial judge agreed and granted the appellee's motion. The Government timely appealed the decision of the trial judge under Article 62, UCMJ, 10 U.S.C. § 862, admitting the urinalysis testing was ordered without second echelon level approval, but claiming the appellee did not have standing to assert the violation of the OPNAVINST as an enforceable evidentiary rule of exclusion at a trial by court-martial.

 Whether the OPNAVINST created an evidentiary rule enforceable by the appellee requires an analysis of the holding in *United States v. Holsworth*, 7 M.J. 184 (C.M.A.1979), citing *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), for the proposition that to be judicially enforceable as an exclusionary rule the regulation: (1) must be " 'mandated by the Constitution or federal law,' " or (2) establish "so important a safeguard to 'the privacy of the citizenry' as to warrant a rule of exclusion as a sanction for violation of the regulation." *Holsworth*, 7 M.J. at 186 (quoting *Caceres*, 99 S.Ct. at 1470, 1473). Clearly, the first prong of *Caceres* is not applicable as there is neither a Constitutional requirement nor federal law compelling second echelon level command authorization for conducting unit sweep urinalysis testing at the unit level. The second prong of *Caceres*, however, requires closer examination of the OPNAVINST in light of CNO Washington D.C. msg 141732Z Nov 85, Drug Abuse Pro-

---

1. Paragraph 6b(1) states, in pertinent part, that [u]nit sweeps must be authorized at the appropriate second echelon level or as the second echelon designates. Random sampling may be ordered by any commander, commanding officer, or officer-in-charge except for those random samplings involving more than 20% of a unit or more than 200 samples, in which case they must first be authorized at the appropriate second echelon level or as the second echelon designates.

gram Advisory 7/85 (Advisory 7/85),[2] which clarifies the purpose of the OPNAVINST requirement of second echelon level command authorization for conducting unit sweeps and specified random sampling.[3]

After reiterating the OPNAVINST provision requiring second echelon command authorization for unit sweeps and random sampling involving more than 20 percent of a unit or more than 200 samples, Advisory 7/85 provides that the authorization requirement is not designed to protect individual rights nor intended to infringe upon a commander's authority to order an inspection. Although Advisory 7/85 further discusses the second echelon level authorization requirement only in regard to random sampling involving more than 20 percent of a unit as a quantitative control device without specifically including reference to unit sweeps, appellee's argument that a different reason therefore must exist in requiring second echelon level command authorization for unit sweeps is misplaced by virtue of ignoring Advisory 7/85's further admonition to use random sampling of fewer personnel more often as unit sweeps utilize 40 percent of the command's yearly laboratory quota.

■ On the contrary, when Advisory 7/85 is read in context and in relationship to the OPNAVINST, we are convinced that second echelon level command authorization in the OPNAVINST was specifically designed as a quantitative control device in limiting the numbers of unit sweeps and of persons tested by random sampling, and was not intended to protect the privacy of servicepersons subject to unit sweeps or random sampling. Any other interpretation of the regulation is unsupported by the evidence of record and plainly erroneous, given (1) the purpose of Advisory 7/85 to curtail demands upon the laboratories by testing fewer personnel through random sampling rather than unit sweeps that result in injudicious utilization of command laboratory quotas and potentially place far greater burdens upon the system, and (2) the requirement for second echelon level command authorization as a safety valve to ensure the unit commanders do not overburden the system.

Accordingly, as the appellee lacked standing to object to the Government's failure to follow its own regulations, we reverse the trial judge in suppressing the evidence in issue and return the record of trial to the Judge Advocate General of the Navy for remand to the trial court for further proceedings.

Senior Judge KERCHEVAL and Judge RAPP concur.

2. Paragraph 3 of Advisory 7/85, promulgated by the Chief of Naval Operations on 14 November 1985, reiterates the second echelon level authorization requirement and goes on to explain that the requirement

> for authorization is not based on the protection of [an] individual's rights nor is it intended to infringe on a commander's authority to order an inspection on his/her personnel. Sole purpose of requiring authorization from the second echelon level for sampling in excess of 20 percent of a unit is to provide control of the quantity of samples being submitted to the NDSL's [Naval Drug Screening Labs]. The labs have a finite testing capability and second echelon level has been tasked to ensure that NDSL's do not receive more samples than they are capable of testing. Therefore, authorization of second echelon level is for coordination of volume of testing being conducted during a particular timeframe vice authority for ordering such testing. Judicious use of unit sweeps is recommended since they use up 40 percent of a command's yearly laboratory urinalysis quota. Random inspection testing of fewer personnel, more often, is the best deterrent and simplifies command collection and chain of custody procedures.

3. *See United States v. Scholz,* 19 M.J. 837 (N.M. C.M.R.1984), citing *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), for the proposition that "[i]n construing administrative regulations, the interpretation given by the agency itself is the ultimate criterion of its meaning, purposes and intent, and that interpretation has controlling weight unless it is plainly erroneous or inconsistent with the regulation." *See also United States v. Russo,* 1 M.J. 134 (C.M.A.1975), requiring the Government to abide by its own regulations where the underlying purpose of such regulations is the protection of personal liberties or interests.