### UNITED STATES

v.

Robert H. BLEDSOE, Sr., 481–66–5230, Mess Management Specialist Second Class (E–5), U.S. Navy.

NMCM 90 03832.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 May 1990.

Decided 19 Nov. 1993.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Maj. Laura L. Scudder, USMC, Appellate Government Counsel.

Before LARSON and WELCH, JJ., and MOLLISON, Senior Judge.

MOLLISON, Senior Judge:

The single issue in this remand from the United States Court of Military Appeals is whether the appellant's case was appropriately considered under Chief of Naval Operations Instruction (OPNAVINST) 1752.2, which publishes policy and program guidance for the Family Advocacy Program (FAP). We conclude that it was and reaffirm.

Consistent with his pleas of guilty, the appellant was found guilty of sodomy with a child, assault with intent to commit rape, and indecent acts upon a child, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 934. A military judge, sitting alone as a general court-martial, sentenced the appellant to be confined for seven years, to forfeit $350.00 pay per month for a period of 84 months, to be reduced to pay grade E–1, and to be discharged from the Naval Service with a dishonorable discharge. The convening authority approved the sentence as adjudged but suspended confinement in excess of five years pursuant to a pretrial agreement.

The appellant's findings of guilty and sentence were affirmed by this Court on 11 March 1992. *United States v. Bledsoe*, No. 90 3832 (N.M.C.M.R. 11 March 1992). On appeal before the United States Court of Military Appeals, the appellant raised for the first time the issue of whether the appellant's command incorrectly considered the appellant's case under OPNAVINST 1752.2. On 19 November 1992, the United States Court of Military Appeals set aside this Court's decision and remanded the record for consideration of this issue, citing *United States v. Bell*, 30 M.J. 168 (C.M.A.1990) (summary

disposition). *United States v. Bledsoe,* 37 M.J. 51 (C.M.A.1992) (summary disposition). Accordingly, this Court assigned the following issue for briefing by the parties:

WHETHER APPELLANT'S COMMAND INCORRECTLY CONSIDERED APPELLANT'S CASE UNDER OPNAVINST 1752.3 [sic] WHEN APPELLANT HAD "SELF–REFERRED" HIMSELF IN ORDER TO OBTAIN HELP FOR HIS DEVIANT BEHAVIOR, APPELLANT HAD SUFFERED FROM A BRAIN TUMOR WHEN HE COMMITTED THE OFFENSES IN QUESTION, AND WHEN APPELLANT HAD SERVED HONORABLY IN THE NAVY FOR OVER 19 YEARS?[1]

The appellant argues that his case had not been properly considered under the aforementioned instruction and requests remand for a new staff judge advocate's post-trial recommendation and a new convening authority's action. See UCMJ art. 60, 10 U.S.C. § 860; Rule for Courts–Martial (R.C.M.) 1106, 1107, Manual for Courts–Martial, United States, 1984. The Government takes a contrary position.

### *Background.*

Secretary of the Navy Instruction (SECNAVINST) 1752.3 of 27 January 1984 established the Department of the Navy policy on Family Advocacy to "address the prevention, evaluation identification, intervention, treatment, follow-up, and reporting of child and spouse maltreatment, sexual assault and rape." SECNAVINST 1752.3, ¶ 1. The objective of the program is to prevent family maltreatment. The objective is to be achieved by a number of means, including disciplinary sanctions "when considered appropriate by the member's commanding officer." *Id.* at ¶ 6e. Thus, the Family Advocacy Program "is not a substitute for disciplinary action," however, "assistance to maltreators under the Family Advocacy Program is not in and of itself a basis for punitive action...." *Id.* at ¶ 6. As a further

matter of policy, the Secretary of the Navy also stated that breaking the cycle of family abuse is a primary goal of the program and one method of achieving this goal is to provide an avenue for abusers to seek assistance for their problem. *Id.* at ¶ 7a. Accordingly, a voluntary self-referral counseling procedure was established. "When justified by circumstances of positive previous performance, individual motivation as evidenced by the self-referral, and positive rehabilitative potential, administrative action in the form of counseling/education is the preferred course of action." *Id.* at ¶ 7a(2). The Secretary delegated responsibility for establishing the program to the Chief of Naval Operations and the Commandant of the Marine Corps.

OPNAVINST 1752.2 of 6 March 1987 implements the aforementioned Secretary of the Navy instruction for naval activities. This instruction sets forth the procedure by which abusers may be admitted to the Family Advocacy Program. It provides that all cases of child abuse must be referred to a Family Advocacy Representative who will ensure the alleged abuser's case is screened by a Family Advocacy Committee case review subcommittee. OPNAVINST 1752.2, ¶ 4c. That subcommittee determines whether the allegations are substantiated and, if they are, recommends a disposition of the case to the abuser's commanding officer. *Id.* at ¶¶ 4c, 4g. In cases of incest, including sexual abuse of stepchildren, the commanding officer must submit a "disposition package" to Commander Naval Military Personnel Command who decides whether the individual is eligible for treatment or separation. The "disposition package" includes Naval Investigative Service (NIS) and civilian investigations and reports, as well as the Family Advocacy subcommittee's determination and recommendations. *Id.* at ¶ 4e. Eligibility for treatment is based on: (1) the commanding officer's recommendation for retention, (2) suitability for treatment/rehabilitation, (3) a demonstration of sincere motivation for rehabilitation, (4) a record of positive performance, and (5)

---

1. The issue as framed on remand is problematic because the appellant's commanding officer and authority processing administrative matters associated with the Family Advocacy Program, was not the convening authority. Nonetheless, we have taken a broad view of the relationship of the Family Advocacy Program to the disciplinary action taken in this case.

a "definite potential for further worthwhile Naval service." *Id.* at ¶ 4e.

OPNAVINST 1752.2 also sets forth a number of policies concerning the Family Advocacy Program. Among other things, it states:

Service members must be held accountable for their behavior. Swift and certain intervention and subsequent disciplinary action are one of the most effective deterrents to family violence. However, the impact of any punishment on the victim and the entire family should be carefully weighed. When deciding whether to pursue disciplinary/administrative action, the following should be considered:

(1) When an abusive service member is determined treatable by the Family Advocacy Committee (FAC) case review subcommittee, and has potential for further effective service, the Navy's interests, justice, and the family/victim may be served by a suspended sentence, with severe vacating conditions, while the member is in treatment.

(2) Disciplinary/administrative action is most appropriate when any of the following apply:

(a) The service member fails to acknowledge his or her behavior and assume responsibility for it.

(b) The behavior is compulsive, repeated, and represents a specific danger.

(c) The victim has suffered serious injury.

(d) There is sufficient evidence for conviction.

(e) Testifying in court is in the best interest of the victim.

OPNAVINST 1752.2, ¶ 3.

The same instruction also provides that servicemembers should be encouraged to seek assistance for their problem at the earliest opportunity. Qualified personnel who may receive voluntary self-referrals include Family Advocacy Representatives, medical officers, Family Service Center counselors, drug/alcohol abuse counselors, commanding officers, executive officers, and persons designated by commanding officers. Admissions of abuse must be reported to the Family Advocacy Representative. Under the instruction, the commanding officer determines whether an admission is a voluntary self-referral or not. The instruction further states that the only clear case of self-referral occurs when only the abuser and the victim are aware of the abuse until the disclosure is made, however, even in cases where self-referral cannot be established in the strictest sense, when determining disposition of the case, the servicemember should receive credit for coming forward, to whatever degree the referral can be considered to be voluntary. *Id.* at ¶ 4a.

In *Bell,* our senior Court remanded the record for us to determine whether a Marine Corps accused's case had been disposed of in accordance with the Marine Corps order and policy statement analogous to the foregoing OPNAV Instruction. 30 M.J. at 168. On remand, this Court concluded that the Marine Corps policy set forth no bar to trial, whether or not the accused was a self-referred child abuser. However, since we could not determine whether the convening authority had applied the Marine Corps policies in Bell's case, we ordered a new convening authority's action in which the convening authority was required to state (1) why Bell did or did not fall within the terms and criteria of the Marine Corps policy, and (2) if he did and Bell's punitive discharge was again approved, why Bell should not be retained and treated. *United States v. Bell,* No. 89 1067R, slip op. at 4–5 (N.M.C.M.R. 31 July 1991).

In response to a similar remand in this case, we ordered the Government to produce: (1) enclosures to the "disposition package" submitted by the appellant's commanding officer to Commander, Naval Military Personnel Command, (2) the commanding officer's letter forwarding the appellant's charges to the general court-martial convening authority pursuant to R.C.M. 401, (3) the staff judge advocate's pretrial advice letter prepared in accordance with Article 34, UCMJ, 10 U.S.C. § 834, and R.C.M. 406, and (4) any other records in the Government's possession that would help us determine whether the convening authority or appellant's command had correctly considered the OPNAV instruc-

tion.[2] The Government was unable to produce either the forwarding letter or the Article 34 pretrial advice.[3] It did produce other documents pertaining to the processing of the appellant's case. From the matters now of record, including the recommendation of the Family Advocacy subcommittee, the commanding officer's disposition letter to the Naval Military Personnel Command, that command's memorandum recording its determination concerning the appellant's eligibility for the treatment program, reports of NIS and civilian investigative agencies, medical records, and statements of the appellant, his victims and others, we find the following:

On 30 December 1988, the appellant entered the bedroom of his 15-year old stepdaughter and assaulted her with the intent to rape her. On 4 January 1989, the appellant voluntarily checked himself into the Jo Ellen Smith Psychiatric Hospital, New Orleans, LA.[4] He remained there for several days. On 12 January 1989, the appellant was admitted to the U.S. Air Force Medical Center, Keesler Air Force Base, MS, for psychiatric evaluation. There he admitted to the aforementioned assault on his stepdaughter. In February 1989, the appellant was also voluntarily admitted to Westbank Center for Psychotherapy, New Orleans, LA, where he again admitted to the assault upon his stepdaughter. Subsequently, a parish child protection agency,

the Family Advocacy Representative, and NIS were notified of the appellant's admissions.[5] Investigations were conducted, during which the appellant's two stepdaughters reported a history of sexual abuse of both of them by the appellant. One of the stepdaughters stated that she had informed her mother of the abuse, but that her mother took no action. On 26 April 1989, the appellant made a sworn statement to NIS. In that statement appellant stated he had recently undergone brain surgery for the removal of a tumor and he could not remember any of the acts of sexual abuse his stepdaughters alleged had occurred.[6] Local authorities declined prosecution, citing a lack of jurisdiction over crimes committed on federal reservations. A psychotherapist at the Westbank Center for Psychotherapy reported that it should be possible to rehabilitate the appellant, however, he concluded the appellant's prognosis was guarded at best.[7] On 4 April 1989, the Family Advocacy subcommittee's determination and disposition recommendation were reported to appellant's commanding officer. The subcommittee recommended that pending disciplinary action, the appellant should be admitted to the Family Advocacy Treatment Program. The subcommittee also noted that acceptance in the program did not negate the need for disciplinary action by the command. On 22 June 1989, the appellant's

---

**2.** The necessity for considerable post-trial fact-finding to respond to remands on this issue suggests that the parties could facilitate resolution of the matter by including in the allied papers, such as the special court-martial convening authority's forwarding letter, the staff judge advocate's pretrial advice, and the staff judge advocate's post-trial recommendation, information reflecting that disciplinary action was taken in contemplation of the policies set forth in the OPNAV instruction.

**3.** An Article 32, UCMJ pretrial investigation was waived by the appellant on 9 April 1990. Allied papers.

**4.** An NIS report states that Mrs. Bledsoe informed NIS that the appellant took this action after first consulting with a flight surgeon and a person at the base Family Service Center. The report of the determination/recommendation of the Family Advocacy Subcommittee states that the appellant took this action when he attempted to rape his stepdaughter and she sought help.

CO, Naval Medical Clinic, New Orleans ltr of 4 Apr 89.

**5.** The appellant was evaluated by the Westbank Center for Psychotherapy on 15 February 1989. In its undated report of that evaluation, a psychotherapist states the appellant admitted to acts of sexual abuse of both stepdaughters, however, it is not clear whether the admission to other acts of abuse beyond the assault on 30 December 1988 was reported to child protective services and other agencies at the time they commenced their own investigations.

**6.** At trial during the guilty plea examination of the appellant by the military judge, the appellant stated that alcohol was involved in the offenses, however, he admitted that he knew what he was doing at the time and recalled committing the offenses to which he was pleading guilty. Record at 40, 43, 46.

**7.** See note 5, *supra*.

commanding officer submitted his "disposition package" to Naval Military Personnel Command. The "disposition package" included evaluations by the Westbank Center and the Keesler AFB Medical Center, an NIS report, the subcommittee's report, and performance evaluations. The commanding officer noted in the "disposition package" that the appellant was considered a voluntary self-referral; that appellant's marriage was intact, but that none of the appellant's children was residing in the home [one was in the custody of the Department of Human Services, Salem, Oregon; one was in the temporary custody of the State of Louisiana and herself institutionalized for a time; and one was married]; that the appellant's military performance had been good; that he had been consistently recommended for retention and advancement; but, that "his sexual misconduct renders him unsuitable for future worthwhile military service." Charges were preferred against the appellant on 19 September 1989. On 5 February 1990, the Naval Military Personnel Command determined that the appellant was not eligible for the Family Advocacy Program "due to his poor command recommendation, and member is considered to be untreatable." On 9 April 1990, the appellant submitted a pretrial agreement offer to the general court-martial convening authority and waived an Article 32, UCMJ pretrial investigation.[8] On 7 May 1990, the general court-martial convening authority accepted the pretrial agreement offer and referred the charges to trial by general court-martial. The appellant was tried on 14 May 1990, pled guilty, and was sentenced, as noted above. Beyond the foregoing, the record also reflects the appellant had admitted to heavy alcohol abuse in the past.

### Discussion.

■ We have been cited no provision of the Constitution or a federal statute that bars prosecution under the material facts of this case, nor for that matter have we been cited any provision of the Constitution or a federal statute that mandates the regulation in question. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).[9] By their own terms the aforementioned policy statements do not preclude disciplinary action for incest, even in cases of voluntary self-referral. *See United States v. Bell,* 39 M.J. 684 (N.M.C.M.R.1993) (review following remand to convening authority). At most these policy statements indicate that disciplinary action will be taken in contemplation of other rehabilitative efforts. Therefore, *if* a servicemember is admitted to the Family Advocacy Program, these policy statements suggest that disciplinary action might be adjusted, tempered, or otherwise coordinated with the Family Advocacy Program to facilitate the rehabilitation of the offender. Relevant opportunities for exercising discretion within the disciplinary process to accommodate the Family Advocacy Program are in the referral decision, plea bargain negotiations, and action on the sentence.

■ In any event, the *sine qua non* for the application of the policies set out in detail above is missing in appellant's case, viz, the appellant's acceptance into the Family Advocacy Program. To the contrary, appellant's eligibility for the Family Advocacy Program was determined in accordance with departmental directives by Commander, Naval Military Personnel Command, the officer having the authority and responsibility for making that determination. We do not believe a discretionary, personnel decision of this nature is subject to our judicial review, nor do we believe that we could substitute our judgment as to the appellant's eligibility for this complex program in any case. *See United States v. Allen,* 31 M.J. 572 (N.M.C.M.R. 1990), *aff'd,* 33 M.J. 209 (C.M.A.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992) (discontinuance of retired pay not subject to judicial review by military appellate courts); *Herrod v. Widdecke,* 19 U.S.C.M.A. 574, 42 C.M.R. 176, 1970 WL 7034 (1970) (Court of Military Appeals had

---

8. 10 U.S.C. § 832.

9. *See also United States v. Bell,* 38 M.J. 358, 365, 369, (C.M.A.1993) (Cox, J.) (unrelated to *United States v. Bell, supra* ).

no authority to direct issuance of a decoration); *Mueller v. Brown,* 18 U.S.C.M.A. 534, 40 C.M.R. 246, 1969 WL 6058 (1969) (in the absence of court-martial proceedings, Court of Military Appeals had no authority to consider administrative denial of an application for discharge as a conscientious objector).[10] Were we authorized to review this decision, however, we would be obliged to note that the appropriate decision-maker had at his disposal a considerable amount of information upon which to base his conclusion not to admit the appellant to the Family Advocacy Program notwithstanding his commanding officer's treatment of the appellant as a voluntary self-referral: (1) the appellant disclaimed knowledge of his prior acts of child sexual abuse and implicitly claimed amnesia; (2) the appellant's behavior was compulsive, repeated, and represented a specific danger; (3) the victims suffered serious psychological injury; and, (4) there was sufficient evidence for conviction. We also note there is nothing in the record suggesting the appellant appealed this adverse personnel decision through administrative channels. See UCMJ art. 138, 10 U.S.C. § 938; Navy Regs. art. 1106 (1973).

■ We have previously articulated a number of rules concerning claims that the convening authority improperly referred charges to trial. We have previously held that:

(1) The exercise of the convening authority's discretion in referral of charges enjoys a presumption of regularity;

(2) The referral decision is only reviewable for an abuse of discretion;

(3) An abuse of discretion may occur when the convening authority is an accuser, acts out of bad faith, improper motives or prosecutorial vindictiveness, or applies improper standards (*e.g.,* referral on the basis of race, religion, or national origin);

(4) A claim of an abuse of discretion in referral of charges to trial does not raise a claim of jurisdictional error;

(5) When the facts that give rise to the claim are known at trial time, the issue must be raised at trial in order that the record may be fully developed, appropriate findings entered and action taken; and

(6) When the accused does not raise the issue at trial, he waives the issue on appeal.

*United States v. Nix,* 36 M.J. 660 (N.M.C.M.R.1992), *petition granted,* 37 M.J. 187 (C.M.A.1993); *United States v. Lewis,* 34 M.J. 745 (N.M.C.M.R.1991). *See also United States v. Green,* 37 M.J. 380 (C.M.A.1993) (race is an improper basis for referral of charges or action on the sentence).

We believe these rules should apply in the appellant's case. We note specifically that: (1) it was objectively reasonable to refer charges of this nature to trial by general court-martial; (2) the Family Advocacy subcommittee specifically stated its recommendation did not negate the need for disciplinary action; (3) the appellant waived a pretrial investigation and tendered a pretrial agreement offer before charges were referred to trial by general court-martial; (4) the convening authority accepted the pretrial agreement offer and referred charges to trial after Commander, Naval Military Personnel Command determined the appellant was ineligible for the Family Advocacy Program; (5) the appellant entered a plea of guilty pursuant to the pretrial agreement in which the appellant bargained for a limitation of his sentence on the basis of a plea of guilty to only some of the offenses preferred against him; (6) the appellant did not complain at trial that charges were improperly referred against him; (7) the convening authority lived up to his end of the bargain; and, (8) there is no evidence the convening authority was the accuser, acted out of bad faith, improper motives or prosecutorial vindictiveness, or applied improper standards.

In respect to his action on the sentence, we note that the convening authority entered into a pretrial agreement with the appellant to limit the sentence the appellant might ultimately receive, the convening authority kept his end of the bargain, the appellant raised the departmental policy discussed

---

10. For cases treating failures to process requests for discharge in lieu of trial, see *United States v. Woods,* 26 M.J. 372 (C.M.A.1988), *United States v. Shoup,* 31 M.J. 819 (A.F.C.M.R.1990) (citing cases), and *United States v. Hudson,* 48 C.M.R. 270 (A.C.M.R.1974).

above in post-trial matters submitted pursuant to R.C.M. 1105, the convening authority expressly considered the post-trial clemency matters in taking action on the appellant's sentence, and the approved sentence was appropriate.

*Conclusions.*

█ Following the Court of Military Appeal's remand in *Bell,* we returned the record for a new staff judge advocate's recommendation and a new convening authority's action. We did so because we were uncertain as to the relationship of the pertinent regulation to the military justice proceedings in that case. *United States v. Bell,* No. 89 1067R, slip op. at 2 (N.M.C.M.R. 31 July 1991). The appellant's case is clearly distinguishable because before disciplinary proceedings were undertaken, the appellant's ineligibility for the Family Advocacy Program had already been determined by the appropriate authority. Neither a new staff judge advocate's recommendation nor a new convening authority action, the relief sought by the appellant, would alter that fact. In short, we conclude the convening authority acted in accordance with his prerogatives under the Code, the Manual, and departmental regulations. Accordingly, we reaffirm our previous decision in the appellant's case.[11]

Chief Judge LARSON and Senior Judge WELCH concur.

---

11. The appellant has taken the opportunity of this remand to assign additional errors. Those assignments are beyond the scope of this remand. *United States v. Jordan,* 35 M.J. 856 (N.M.C.M.R.1992), *aff'd,* 38 M.J. 346 (C.M.A. 1993). In any event, these additional assignments of error are without merit. *United States v. Weiss,* 36 M.J. 224 (C.M.A.1992), *cert. granted,* — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Graf,* 35 M.J. 450 (C.M.A.1992); *United States v. Mitchell,* 37 M.J. 903 (N.M.C.M.R.1993) (en banc).