## UNITED STATES

v.

**George M. BROWN, 435–41–8220 Aviation Structural Mechanic (Equipment) Second Class (E–5) U.S. Navy.**

**NMCM 93 0689.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 7 Dec. 1992.

Decided 26 May 1994.

LT Philip Sundel, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, DeCICCO and GUERRERO, JJ.

MOLLISON, Senior Judge:

Appellant's is another case presenting a post-trial claim that charges of child sexual abuse should have been disposed of by the court-martial convening authority in some manner other than the way they were. We

find no error and affirm. We further hold: The policies set forth in the directives establishing the Family Advocacy Program on child abuse do not limit the prerogatives of a convening authority or the exercise of his discretion under the Uniform Code Military Justice; those policies do not create a personal right that may be advanced in bar of otherwise lawful disciplinary action against an accused under the UCMJ; and the recommendations and decisions made by authorities under the directives implementing the Family Advocacy Program are not reviewable by a Court of Military Review.

### The Material Facts.

The appellant twice molested his 3–year-old adopted son in June of 1988 in family housing at Naval Air Station, Lemoore, California. The first instance of molest occurred after the appellant had given the child a bath. The appellant performed fellatio on his son for approximately 30 seconds, then stood up and made the child fellate him for approximately 1 minute. The appellant discontinued this activity when it occurred to him that it was improper. About 2 weeks later, the appellant saw the child using the bathroom and made the child fellate him for approximately 2 minutes. The appellant then removed his penis from the child's mouth and masturbated until he ejaculated in the child's face.

The molestation went undetected for 4 years until the child, then age 7, reported it to his grandmother. She in turn reported it to the appellant's wife, who telephoned the appellant and confronted him with the accusation. The appellant admitted its accuracy. At his wife's insistence the appellant sought counselling at the base Family Service Center on 4 June 1992. The Director of Clinical Services of the center began her interview with the appellant by informing him that she was a "mandated reporter regarding child abuse and that any information he disclosed may be used in a court of law." Case note of 4 June 1992. The appellant admitted to her

one of the three acts of molest of which he was ultimately convicted. *Id.* The customary state and military authorities were notified. In the next month the appellant was interrogated by the Naval Investigative Service,[1] was evaluated by a clinical psychologist at the local naval hospital, and was counselled at the Mental Health Center, Hanford, California. The case was also reviewed by the base Family Advocacy Committee case review subcommittee on 24 June 1992 and again on 27 August 1992. See Navy OPNAVINST 1752.2, ¶ 4c (6 Mar 1987). Persons from the appellant's command participated in the Family Advocacy process.

On 31 August 1992, a charge and three specifications of sodomy with a child in violation of Article 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 925 (1988), were received by the appellant's commanding officer, an officer exercising special court-martial jurisdiction. UCMJ art. 23, 10 U.S.C. § 823 (1988). Subsequently, the appellant's defense counsel proposed a pretrial agreement whereby the appellant would waive an Article 32 pretrial investigation[2] and plead guilty at a general court-martial in exchange for a limitation on confinement and mitigation of a dishonorable discharge to a bad-conduct discharge. Rule for Courts–Martial (R.C.M.) 705, Manual for Courts–Martial, United States, 1984. The special court-martial convening authority forwarded the charge to the general court-martial convening authority, recommending acceptance of the pretrial agreement offer. UCMJ art. 30(b), 10 U.S.C. § 830(b) (1988); R.C.M. 401, 402, 404. The appellant's pretrial agreement offer was accepted and the charge was referred to trial by general court-martial. R.C.M. 407.

The appellant was tried by a military judge sitting alone on 7 December 1992. The appellant pled guilty in accordance with his pretrial agreement offer. The parties disclaimed the existence of any other pretrial agreements. Record at 26. The military judge found the appellant's pleas of guilty to

---

1. The charge and specifications in this case were apparently the product of two interrogations of the appellant by the Naval Investigative Service. Record at 51.

2. UCMJ art. 32, 10 U.S.C. § 832 (1988).

be provident and entered findings of guilty accordingly. R.C.M. 910.

The appellant testified during the pre-sentencing procedure. R.C.M. 1001(c)(2)(B). As a result of that testimony, the military judge pressed the parties on the question of whether the appellant was or was not accepted in the Family Advocacy Program. Record at 56–63. Ultimately, counsel informed the military judge that the appellant had been offered the program, however, a decision by the subcommittee as to treatment was being deferred pending the outcome of the court-martial. *Id.*

The military judge sentenced the appellant to be confined for 12 months, to be reduced to pay grade E–1, and to be discharged with a bad-conduct discharge. This sentence was less than that provided for in the pretrial agreement. The military judge also stated:

> It's the recommendation of this court that the reevaluation that is pending by the Family Advocacy Program Committee be done; and that if following this reevaluation as they term it, the accused is admitted to the Family Advocacy Program for treatment, that the bad-conduct discharge, the reduction in rate to E–1 and all confinement in excess of 6 months be suspended; and that a condition of the suspension be that the accused successfully complete the Family Advocacy Program's prescribed course of treatment.

Record at 69.

The military judge's recommendation was brought to the convening authority's attention by the staff judge advocate in his post-trial recommendation. R.C.M. 1106. Additionally, the issue of treatment was brought to the convening authority's attention through clemency matters submitted on the appellant's behalf. R.C.M. 1105. The convening authority elected to approve the sentence without modification or suspension. UCMJ art. 60(c), 10 U.S.C. § 860(c) (1988).

The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (1988). This Court may affirm such findings of guilty and such part of the sentence as it finds correct in law and fact and determines on the basis of the entire record should be approved. UCMJ art. 66(c), 10 U.S.C. § 866(c) (1988). This Court may hold a finding or sentence incorrect on an error of law only if the error materially prejudices the substantial rights of the appellant. UCMJ art. 59(a), 10 U.S.C. § 859(a) (1988).

The appellant assigns three errors.[3] The second and third assignments of error are without merit and do not require further discussion. *United States v. Mitchell,* 39 M.J. 131 (C.M.A.1994).

The essence of the appellant's first assignment of error is that the convening authority abused his discretion by referring appellant's charges to trial and by approving the bad-conduct discharge. Appellant's Brief at 9. The appellant specifically claims that the decision not to retain and treat the appellant was contrary to the intent of the two instructions setting forth the Navy's Family Advocacy Program on child abuse, Navy SECNAVINST 1752.3 (27 Jan 1984) and Navy OPNAVINST 1752.2 (6 Mar 1987).

### Discussion.

In *United States v. Bledsoe,* 39 M.J. 691 (N.M.C.M.R.1993), we examined in some detail the Family Advocacy Program and its relationship to disciplinary proceedings. There we held that this program's policy statements did not preclude disciplinary action for child sexual abuse, even in cases of voluntary self-referral.[4]

---

3. I. THE CONVENING AUTHORITY ABUSED HIS DISCRETION IN DETERMINING THAT APPELLANT WAS NOT AN APPROPRIATE CANDIDATE FOR TREATMENT AND RETENTION IN THE NAVAL SERVICE.

II. AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS AN INAPPROPRIATELY SEVERE PUNISHMENT.

III. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MA-

RINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (FOOTNOTE OMITTED.)

4. *See also United States v. Roemhildt,* 37 M.J. 608 (A.C.M.R.1993). The appellant does not qualify as a voluntary self-referral. *See Bledsoe; United States v. Bell,* 39 M.J. 684 (N.M.C.M.R.1993).

At most these policy statements indicate that disciplinary action might be adjusted, tempered, or otherwise coordinated with the Family Advocacy Program to facilitate the rehabilitation of the offender. Relevant opportunities for exercising discretion within the disciplinary process to accommodate the Family Advocacy Program are in the referral decision, plea bargain negotiations, and action on the sentence.

*Id.* at 696. We also held:

(1) The exercise of the convening authority's discretion in referral of charges enjoys a presumption of regularity;

(2) The referral decision is only reviewable for an abuse of discretion;

(3) An abuse of discretion may occur when the convening authority is an accuser, acts out of bad faith, improper motives or prosecutorial vindictiveness, or applies improper standards (*e.g.,* referral on the basis of race, religion, or national origin);

(4) A claim of an abuse of discretion in referral of charges to trial does not raise a claim of jurisdictional error;

(5) When the facts that give rise to the claim are known at trial time, the issue must be raised at trial in order that the record may be fully developed, appropriate findings entered and action taken; and

(6) When the accused does not raise the issue at trial, any claim of error is waived on appeal.

*Id.* at 697. These principles apply to appellant's case.

■ Presumptively, the convening authority did not abuse his discretion in referring appellant's charges to trial by general court-martial. The appellant has presented nothing suggesting the convening authority was the accuser, acted out of bad faith, improper motives or prosecutorial vindictiveness, or applied improper standards (*e.g.,* referral on

the basis of race, religion, or national origin). Moreover, the appellant did not claim any error at trial. To the contrary, the appellant's trial by general court-martial appears to have been the product of pretrial negotiations in which the appellant himself waived a pretrial investigation and entered an unconditional plea of guilty. Hence, the appellant forfeited any claim of error on appeal respecting the decision to refer his case to trial by court-martial.[5] R.C.M. 905(b)(1), (e); *see also United States v. Olano,* — U.S. —, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Bledsoe.*

As to the convening authority's actions respecting plea negotiations, it appears the convening authority accepted the agreement the appellant offered. That agreement represented a substantial limitation on the maximum authorized sentence.

■ As to the action on appellant's sentence, the UCMJ requires the convening authority or another authorized person to take action on the sentence. UCMJ art. 60(c)(2), 10 U.S.C. § 860(c)(2) (1988). *"[I]n his sole discretion,* [the convening authority] may approve, disapprove, commute, or suspend the sentence in whole or in part." *Id.* (emphasis added). "The authority to modify ... the ... sentence of a court-martial is a matter of *command prerogative involving the sole discretion* of the convening authority." UCMJ art. 60(c)(1), 10 U.S.C. § 860(c)(1) (1988) (emphasis added). *See also* R.C.M. 1107(b). Here the convening authority approved a sentence that was legal—in fact substantially less than that for which the parties had bargained. It also appears that the appellant advanced the issue of retention and treatment in his post-trial clemency matters. The convening authority considered those matters, as well as the military judge's recommendation. From the record before us it

---

5. The rules of forfeiture and waiver are neither hypertechnical nor traps for the unwary. They are designed to promote justice and its efficient administration. *See United States v. Sanders,* 33 M.J. 1026 (N.M.C.M.R.1991). The appellant raised no matter at trial respecting the referral of his case—the place where evidence could have been taken, a record made, essential findings entered, and any error possibly remedied. Nor does the appellant suggest he was ever denied

access to the convening authority. *See United States v. Nix,* 36 M.J. 660 (N.M.C.M.R.1992), *petition granted,* 37 M.J. 187 (C.M.A.1993). In fact, the pretrial agreement offer tendered by the appellant to the convening authority was accepted. Appellant's trial was the time and place to raise any genuine claims of irregularity in reference of charges. Since he did not, he may not raise them for the first time on appeal.

appears the appellant received that to which he was entitled—an individualized, legally appropriate and careful review of his sentence by the convening authority. *United States v. Fernandez,* 24 M.J. 77 (C.M.A. 1987).

We recall "[t]he exercise of discretion implies conscientious judgment, not arbitrary action. It takes account of the law and the particular circumstances of the case and is directed by reason and conscience to a just result." *United States v. Fisher,* 37 M.J. 812, 816 (N.M.C.M.R.1993) (citing *Burns v. United States,* 287 U.S. 216, 223, 53 S.Ct. 154, 156–57, 77 L.Ed. 266 (1932)). "[A]n abuse of discretion involves far more than a difference in opinion. The challenged action must be found to be arbitrary, fanciful, clearly unreasonable, or clearly erroneous in order to be invalidated on appeal." *United States v. Travers,* 25 M.J. 61, 62 (C.M.A. 1987) (citation, quotations and ellipses omitted). In all of these matters, i.e., the referral decision, plea negotiations, and action on the sentence, the convening authority exercised discretion within the limits of the law and none of his decisions was arbitrary, fanciful, clearly unreasonable, or clearly erroneous.[6]

 In his brief and in oral argument, however, the appellant claims that the discretion of the convening authority in taking action on the sentence is somehow restricted by the Family Advocacy policy instructions. The appellant cites no authority for the proposition that either the Secretary of the Navy or the Chief of Naval Operations possesses the authority to restrict the exercise of discretion in making decisions committed under the Code to the convening authority. The contention is at odds with the Code and Manual whereby action on the sentence is committed to the sole discretion of the convening authority. In fact, when a convening authority views departmental policies as mandating a particular action on the sentence, the convening authority abdicates his responsibility under Article 60 and a new action is required. *United States v. Doherty,* 5 C.M.A. 287, 17 C.M.R. 287, 1954 WL 2604 (1954) (convening authority may have perceived his discretion was limited by a SECNAV instruction); *United States v. Moore,* 32 C.M.R. 696, 1962 WL 4582 (N.B.R.1962) (convening authority may have perceived his discretion was limited by SECNAV and BUPERS instructions); *see also United States v. Betts,* 12 C.M.A. 214, 30 C.M.R. 214, 1961 WL 4427 (1961) (convening authority did not perceive his discretion in action on sentence was limited by SECNAV instruction); *United States v. Holmes,* 7 C.M.A. 642, 23 C.M.R. 106, 1957 WL 4439 (1957) (policy directives can neither control nor influence the convening authority's action on the sentence); *cf. United States v. Kirsch,* 15 C.M.A. 84, 35 C.M.R. 56, 1964 WL 4925 (1964) (convening authority may consider policies of superiors in taking action on the sentence, but he is not bound to do so); *United States v. Rivera,* 12 C.M.A. 507, 31 C.M.R. 93, 1961 WL 4534 (1961) (convening authority referred sodomy charges to general court-martial independent of SECNAV policy directive on homosexuals); *United States v. Hawthorne,* 7 C.M.A. 293, 22 C.M.R. 83, 1956 WL 4740 (1956) (superior's policy statement on elimination of repeat offenders improperly influenced subordinate to forward charges to general court-martial convening authority); *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990) (*en banc*), *aff'd,* 33 M.J. 209 (C.M.A.1991), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 1473–74, 117 L.Ed.2d 617 (1992) (convening authority was not subject to unlawful command influence through SECNAV policy guidance stating that national security cases should ordinarily be referred to trial by general court-martial); UCMJ art. 37, 10 U.S.C.

---

6. Whereas we must examine the appellant's sentence for its appropriateness, the exercise of clemency was placed by Congress in the convening authority's hands. *United States v. Healy,* 26 M.J. 394 (C.M.A.1988).

In support of his contention the convening authority acted contrary to the directives establishing the Family Advocacy Program, the appellant seeks to expand the record by offering additional documents, some of which were prepared before trial. The documents the appellant has chosen to file with the Court and other matters in the record reflect that the appellant's commanding officer and appellant's counsel were acquainted with the program prior to trial and that the convening authority was clearly made cognizant of it post-trial. Nothing in these matters suggests the policies of the program were contradicted or ignored.

§ 837 (1988). In any event, we find nothing in either of the two Family Advocacy directives that purports to limit convening authorities in the exercise of their discretion under Article 60 and R.C.M. 1107.[7]

■ We note that appeals of child abuse convictions have become needlessly prolonged. Extensive, inefficient post-trial record-making has been required to resolve issues not raised at trial. The administrative record the appellant has made in his case is yet incomplete and underscores the problem. For example, in *Bledsoe* we held the *sine qua non* for the application of the program's policies was missing—the accused's acceptance into the program. Whether or not the appellant was accepted into the formal program has not been authoritatively established. The local Family Advocacy personnel and the case review subcommittee may have made recommendations on this point. However, absent from the matters filed with the Court are the "disposition package" and the headquarters decision in appellant's case. See *Bledsoe*. Therefore, the appellant has not established that any of the policies set forth in the aforementioned directives actually applied to him.

Of paramount importance, however, is that these post-trial inquisitions have had as their objective the review of how commanders exercise their discretion in a personnel program—a program that we have not been called upon to review. In *Bledsoe* we held

the decision at the headquarters level whether or not to accept a servicemember in the program was not subject to our judicial review. The time has come for us to state with clarity the legal standing of the Family Advocacy Program's policies in other respects under the UCMJ. In doing so, we are guided by the following principles:

(1) "*[P]olicy* typically is not *law*." *United States v. Sloan*, 35 M.J. 4, 9 (C.M.A.1992).

(2) A regulation may be asserted by an accused only if it is prescribed to protect an accused's right. *Id; see also United States v. Lewis*, 36 M.J. 299 (C.M.A.1993).

(3) "A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1979); *see also United States v. Bell*, 38 M.J. 358 (C.M.A.1993); *United States v. Cooper*, 35 M.J. 417 (C.M.A. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

(4) A court has a duty to enforce an agency regulation when "the Due Process Clause is implicated because an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *Caceres; see also United States v. McGraner*, 13 M.J. 408 (C.M.A. 1982).[8]

---

7. The Secretary of the Navy possesses his own independent clemency power. UCMJ art. 74, 10 U.S.C. § 874 (1988); R.C.M. 1206.

 For a discussion of the use of departmental policy directives during the pre-sentencing procedure and the "collateral-consequences" rule, see *United States v. Kropf*, 39 M.J. 107 (C.M.A. 1994), and *United States v. Rosato*, 32 M.J. 93 (C.M.A.1991).

8. Numerous cases have applied *Caceres. Compare Lewis* (Army advisory message instructing interrogators to ascertain if a suspect "had 'requested' counsel within the last 30 days" was not constitutionally or statutorily required, and the failure to comply with the message did not establish a basis for excluding the accused's confession); *Sloan* (Army regulation establishing policy not to subject retirees to court-martial for misconduct committed prior to retirement except in extraordinary circumstances was not intended to protect an accused's rights and thus did not

establish a basis for relief); *United States v. Thompson*, 33 M.J. 218, 221 (C.M.A.1991) (in discussing The Posse Comitatus Act, 18 U.S.C. § 1385 (1988), the Court in dictum announced, "[i]nvocation of the exclusionary rule for Fourth Amendment violations does not necessarily imply that a statutory or regulatory violation requires the same treatment."); *United States v. Whipple*, 28 M.J. 314 (C.M.A.1989) (accused was not entitled to relief for violation of DoD Directive requiring urine samples be provided in the presence of an observer, as the directive was for the protection of the government); *United States v. Pollard*, 27 M.J. 376 (C.M.A.1989) (deviation from procedures for the collection, transmittal, and testing of urine samples does not render a sample inadmissible as a matter of law); *United States v. Foust*, 17 M.J. 85 (C.M.A.1983) (violation of Army regulation limiting base commander's power to authorize searches only upon affidavit or sworn testimony did not require application of the exclusionary rule because such limits were not constitutionally required); *United States*

To state the obvious, no provision of the Constitution mandates the Family Advocacy Program. The Department of the Navy program is essentially a creature of administrative regulation. Nonetheless, Congress has not been silent on the subject of child abuse prevention. In 1974, Congress enacted the Child Abuse Prevention and Treatment Act, Pub.L. 93–247, 88 Stat. 4 (1974) (codified as amended at 42 U.S.C. §§ 5101–5119c (1988 & Supp. IV 1992)). That legislation mandated the establishment of a National Center and an Advisory Board on Child Abuse and Neglect under the aegis of the now-Secretary of Health and Human Services. It also authorized grants for projects designed to prevent, identify, and treat child abuse and neglect. In 1988, Congress mandated an Inter–Agency Task Force on Child Abuse and Neglect to encourage federal agencies to develop child abuse prevention and treatment activities. Child Abuse Prevention and Treatment Act, Pub.L. 100–294, sec. 101, § 4, 102 Stat. 102, 105 (1988). In 1989, it enacted legislation on child abuse at day care centers on military installations. Military Child Care Act of 1989, Pub.L. 101–189, §§ 1501, 103 Stat. 1589, *reprinted in* 10 U.S.C. § 113 (1988). In 1990, it enacted child abuse reporting and victim service requirements applicable to federal agencies. Crime Control Act of 1990, Pub.L. 101–647, §§ 226, 503, 104 Stat. 4789, 4806, 4820 (codified at 42 U.S.C. §§ 10607, 13031 (Supp. IV 1992)); *see also* Victim and Witness Protection Act of 1982, Pub.L. 97–291, § 6(a), 9 Stat. 1248, *reprinted as amended in* 18 U.S.C. § 1512 (1988). In 1992, it enacted legislation to provide benefits to the dependent victims of abuse by servicemembers whose eligibility to receive retired pay has terminated as a result of their misconduct involving that abuse. National Defense Authorization Act For Fiscal Year 1993, Pub.L. 102–484, § 653, 106 Stat. 2315, 2426 (1992) (codified at 10 U.S.C. § 1408 (Supp. IV 1992)). In 1993, it tasked the Secretary of Defense to promulgate regulations requiring prompt reporting of acts of domestic violence to family advocacy representatives and requiring family advocacy committees to review such situations and make a recommendation to the commander for action. National Defense Authorization Act for Fiscal Year 1994, Pub.L. 103–160, § 551, 107 Stat. 1547, 1661 (1993) (to be codified at 10 U.S.C. § 1058). The same legislation authorized the Secretary of Defense to pay "transitional compensation" to dependent-victims when a servicemember, ineligible for retirement, is separated from active duty or suffers total forfeitures of pay pursuant to a sentence of a court-martial on conviction of a "dependent-abuse" offense. *Id.* at § 554 (also to be codified at 10 U.S.C. § 1058). None of this legislation purports to create special rights in the child abuser. To the contrary, Congress has chosen to let the court-martial process take its normal course vis-a-vis the accused and focus attention on the conditions of victims.

In 1981, the Department of Defense formally established the DoD Family Advocacy Program, citing as its basis the Child Abuse

*v. Whiting,* 12 M.J. 253 (C.M.A.1982) (Air Force provision for speedy processing of courts-martial charges were for management purposes and did not bestow speedy trial rights or due process rights to an accused); *United States v. Morris,* 12 M.J. 262 (C.M.A.1982) (neither North Atlantic Treaty Organization status of forces agreement nor Army regulation conferred upon servicemembers a personal right to object to the admission of evidence on the grounds that it violated American treaty obligations); *United States v. Hilbert,* 22 M.J. 526 (N.M.C.M.R.1986) (Navy instruction requiring second echelon command authorization for unit sweep urinalysis testing was not intended to bestow any benefits to an accused and thus violation of the instruction did not establish a basis for relief); *United States v. Tucker,* 17 M.J. 1004, (N.M.C.M.R.1984) (Navy instruction as to maintenance of personnel records of servicemember in deserter status did not impute any rights to accused nor afford any basis for relief); *with United States v. Strozier,* 31 M.J. 283 (C.M.A.1990) (military judge could suppress admission of urine sample and subsequent testing where "gross deviations" from testing procedures and other factors demonstrate that the evidence lacks sufficient reliability to be considered by the finders of fact); *United States v. Arguello,* 29 M.J. 198 (C.M.A.1989) (accused was entitled to dismissal of marijuana use charge where trial counsel's argument that initial negative test result was actually a positive, violated DoD Directive establishing guidelines for the limitation on use of urinalysis results); *United States v. Konieczka,* 31 M.J. 289 (C.M.A.1990) (military judge properly excluded urinalysis results obtained in violation of Army regulation requiring prescreened negative urine samples to be forwarded to a command laboratory on a random basis).

Prevention and Treatment Act, as amended.[9] Dep't of Defense Dir. 6400.1, Family Advocacy Program (19 May 1981) [hereinafter DOD-DIR 6400.1]. *Inter alia*, the DoD program was intended to provide a coordinated DoD-wide Family Advocacy Program for the prevention, identification, evaluation, treatment and follow-up and reporting of child abuse. DODDIR 6400.1, ¶ D.

DODDIR 6400.1 was reissued in 1986 and 1992. Notably, the following was added:

This Directive ... [p]rovides only internal DoD guidance to protect and assist actual or alleged victims of child abuse and spouse abuse. It is not intended to and *does not create any rights*, substantive or procedural, *enforceable by any* victim, witness, suspect, *accused*, or other person in any matter, civil or criminal. No limitations are placed on the lawful prerogatives of the Department of Defense or its officials.

DODDIR 6400.1, ¶ B.4 (10 Jul 1986) (emphasis added); *see also* DODDIR 6400.1, ¶ B.4 (23 Jun 1992). The 1986 and 1992 directives also stated that rehabilitation and treatment programs for child abuse problems did not preclude appropriate administrative or disciplinary action. DODDIR 6400.1, ¶ D.5 (10 Jul 1986 & 23 Jun 1992).

The Secretary of Defense tasked the military departments with implementing the program. DODDIR 6400.1, ¶ E.4 (19 May 1981). The Department of the Navy implementing directives were promulgated in 1984 and 1987. SECNAVINST 1752.3 & OPNA-VINST 1752.2, *supra*.[10] The SECNAV instruction provides that the program is not a substitute for disciplinary action, but rather a support system for servicemembers who are suitable for rehabilitation and retention. SECNAVINST 1752.3, ¶ 6.f. The OPNAV instruction also observes that disciplinary action is one of the most effective deterrents to family violence. OPNAVINST 1752.2, ¶ 3.b.

Clearly, the DoD source directive confirms the Family Advocacy Program is not intended to create rights enforceable by any accused. Nothing in the two Navy implementing instructions expressly creates an immunity from prosecution, and a grant of immunity will not be implied. R.C.M. 704; *see Sanders*, 33 M.J. 1026, 1029 (N.M.C.M.R. 1991). Nothing in the instructions withholds the authority to dispose of charges in cases of child sexual abuse, including disposition by court-martial. R.C.M. 401(a). Nothing in these instructions purports to vest in child abusers a right to be relieved of the consequences of their actions. And nothing in these instructions suggests that sex crimes against children, particularly by persons who bear responsibilities of trust vis-a-vis their victims, are less serious than any other felony committed by members of the armed forces. To the extent the instructions authorize retention and treatment of the abuser, such appears to be motivated by a desire to do that which is in the best interests of the victims and the military service.[11]

In sum, the policies of the Family Advocacy Program are just that—they are policies, not laws. Neither the Constitution nor federal law mandates a Family Advocacy Program that vests special rights in child abusers. The two Navy instructions were not promulgated to create or protect a right in favor of the appellant or for his guidance

9. In 1976, the Navy established a Child Advocacy Program within its medical component to protect abused children of military families, and in 1979 the program was designated as the Family Advocacy Program. SECNAVINST 1752.3, ¶ 4.

10. The Secretary of the Navy assigned the responsibility of establishing the program to the Chief of Naval Operation and the Commandant, United States Marine Corps. SECNAVINST 1752.3, ¶ 9.

11. The only provision of the instructions arguably protecting a right of an accused is the provision which precludes the use of certain admissions of a servicemember who is a "voluntary self-referral," as that terms is defined. OPNA-VINST 1752.2, ¶ 4a. Reiterating, the appellant was not a "voluntary self-referral" under the terms of the instruction, and in any case his pretrial statement to Family Advocacy personnel was not offered in evidence against him. *United States v. Martindale*, 36 M.J. 870, 881 & n. 8 (N.M.C.M.R.1993); *see also United States v. Raymond*, 38 M.J. 136 (C.M.A.1993) (Army regulation requiring reporting of suspected child abuse was personnel, vice law enforcement, regulation and did not oblige psychiatric social worker to warn accused pursuant to Article 31(b), UCMJ, 10 U.S.C. § 831(b) (1988)).

and benefit.[12] Therefore, the cited regulations, again, provide no basis upon which the appellant may challenge the convening authority's exercise of his discretion.

### Conclusions.

 Accordingly, we hold: The policies set forth in the directives establishing the Family Advocacy Program on child abuse do not limit the prerogatives of a convening authority or the exercise of his discretion under the UCMJ; those policies do not create a personal right that may be advanced in bar of otherwise lawful disciplinary action against an accused under the UCMJ; and the recommendations and decisions made by authorities under the directives implementing the Family Advocacy Program are not reviewable by a Court of Military Review.[13]

### Disposition.

The findings of guilty and sentence as approved on review below are affirmed.

Judges DeCICCO and GUERRERO concur.

---

12. The appellant has not adduced any evidence showing that he relied on the instructions to his detriment. *See generally Martindale,* 36 M.J. at 882, and cases cited therein. In fact all the matters filed by the appellant indicate the appellant was counselled from the outset that any admission would be reported to the appropriate authorities. Nor has there been any evidence of a violation of the Family Advocacy directives by the Government. See *United States v. Bell,* 38 M.J. 358, 369 (C.M.A.1993).

13. An accused's progress in a treatment program or other efforts to modify his criminal behavior are matters which may be considered in mitigation during the pre-sentencing procedure. R.C.M. 1001(c)(1)(B).