**UNITED STATES**

v.

**James C. BELL, 420 92 2335, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 89 1067.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 17 Nov. 1988.

Decided 26 June 1989.

———

LT Wade W. Parrish, JAGC, USNR, Appellate Defense Counsel.

CAPT Wendell A. Kjos, JAGC, USN, Appellate Government Counsel.

Before BYRNE, Chief Judge, and ALBERTSON and JONES, JJ.

PER CURIAM:

The findings of guilty as approved on review below are affirmed.

Based upon appellant's voluntary self-referral to the Family Services Center, subsequent counseling and treatment through civilian sources at his own expense, and in light of other child sexual abuse cases we have reviewed, we find a dishonorable discharge to be an inappropriate punishment in this case. Accordingly, only so much of the sentence as provides for three years confinement, as suspended in part by the convening authority, reduction to pay

---

grade E–1, and a bad-conduct discharge is affirmed.

ALBERTSON, Judge (concurring in part, dissenting in part):

I concur with respect to the findings but I dissent with respect to affirmance of the sentence, as modified, because I find that a sentence which includes an unsuspended punitive discharge is inappropriate under the particular circumstances of this case. Since this Court cannot suspend punitive discharges, I am further constrained to find a punitive discharge inappropriate. *Cf. United States v. Lucas*, 28 M.J. 851 (AFCMR 1989). I find it essential to my own peace of mind to explain my concern.

Appellant was convicted, in accordance with his pleas of guilty, of two specifications of indecent acts upon his two natural daughters (touching the buttocks of one daughter and a touching and slight finger insertion with the other) in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The military judge sentenced him to three years confinement, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence but, pursuant to the terms of a pretrial agreement, suspended all confinement in excess of ten months for a period of one year from the date the sentence was adjudged.

Prosecution of the appellant's criminal acts and his resulting conviction for those acts were made possible by the appellant himself when he revealed his conduct to his wife during marital conversations involving their estranged relationship. They, together with their two daughters, went to Family Services Center for marital counseling. During this counseling session, appellant admitted his criminal acts and asked for treatment, producing, in support of his request, WHITE LETTER No. 2–88 of 26 February 1988 (Subj: COMMAND SUPPORT FOR FAMILIES IN WHICH CHILD SEXUAL ABUSE HAS OCCURRED) issued by the Commandant of the Marine Corps. The Family Services counselor advised appellant of the various resources available to him for obtaining treatment. (The record does not reveal how Marine Corps authorities became aware of the appellant's criminal acts in order to initiate court-martial proceedings against him.) Appellant followed the advice of the Family Services counselor and began psychotherapy counseling and treatment, at his own expense, with the Savannah Psychotherapy Center, and Tidelands Community Mental Health Center under the umbrella of the Chatham County Sexual Abuse Treatment Coalition (hereinafter Savannah). Appellant was required to resort to civilian resources at his own expense because the Marine Corps and Navy did not have the capability of providing such services locally. All reports from the clinical psychologist and clinical social worker at Savannah indicated, at the time of his court-martial, that he was progressing satisfactorily in his treatment program, which included at that time completion of two individual/psychotherapy sessions and fourteen group psychotherapy sessions. Additionally, the Family Services counselor testified at trial that she believed these two incidents were isolated incidents; that he had been cooperative throughout the time since he revealed his conduct; that he was remorseful about his conduct and sincere in his desire for treatment; that he was rightfully concerned about counseling for his daughters which his unstable wife was not interested in providing; that he would be a much more positive influence on the children than his wife; and, that he was on his way to rehabilitation.

I do not, in any fashion, condone the conduct of appellant nor think that he should not be held accountable for such conduct; however, since the Department of Defense, the Department of the Navy and, specifically, the Marine Corps have recognized and assumed responsibility for dealing with the medical and social aspects of the problem of child maltreatment amongst its members, I believe that responsibility, as set forth in Marine Corps Order 1752.3A dated 6 April 1987, must be accepted within the terms of the announced policy, *e.g.*, "prevention, evaluation, identification, intervention, treatment, follow-up, and reporting." Marine Corps policy requires

commanders to ensure that "local military medical treatment facilities and [family service centers], if available, maintain a cooperative relationship to maximize the delivery of services to dysfunctional families." Additionally, Marine Corps policy states:

e. Commanders can break the cycle of child and spouse abuse through identification and treatment. They should encourage Marines who are proven performers to enter treatment or rehabilitation programs. Commanders should be guided in their determinations by the following factors:

(1) the Marine's demonstrated record of performance,

(2) potential for future service,

(3) motivation to change the behavior, and

(4) the evaluation by competent counselors or medical personnel that the Marine is a good candidate for successful treatment.

f. Commanders shall apply disciplinary or administrative sanctions for acts of abuse, when considered appropriate. Disciplinary or administrataive action is most appropriate when:

(1) offenders fail to acknowledge or assume responsibility for their behavior,

(2) behavior of offenders is compulsive, repeated, and represents a specific danger,

(3) the victim has suffered serious injury, or

(4) there is sufficient evidence for conviction and testifying in court is in the best interest of the victim. Commanders should carefully consider the impact of any punishment on the victim and the entire family.

The objective of this Marine Corps policy, as enunciated in paragraph 5, is to stop abuse within families. ... To that end, the program provides a means for the commander to:

a. ...

(1) Enhance unit readiness by operating programs to restore families suffering from abuse to a healthy state.

....

b. ...

(1) Help Marines in dealing with family abuse.

(2) Provide rehabilitative counseling to family members involved in abuse.

....

The Marine Corps Order also sets forth program guidance and defines and explains the four stages of prevention, intervention, rehabilitation and treatment. As to the latter, the order states, in part:

(5) *Rehabilitation/Treatment*

(a) The goals of rehabilitation are to prevent a recurrence of abuse, repair any lasting physical or psychological damage resulting from the abuse, and return the family to a functional state....

(b) Some problems, by nature of their severity, long duration, or frequent recurrence are not amenable to treatment. In such cases, seek the advice and help of competent mental health professionals through nearby military medical treatment facilities, when feasible, or through local social service agencies. Administrative separation from the Marine Corps should be considered.

(c) In cases where there is good rehabilitation potential and the Marine has a record of positive performance, the preferred course of action is counseling or mandated rehabilitation and appropriate disciplinary accountability.

(d) When the Marine is retained and placed in a counseling/rehabilitation program, cooperation and participation with the counseling regimen is essential. Failure to cooperate, progress, satisfactorily complete the prescribed treatment, or repetition of the offense will result in disciplinary or administrative action which could include separation from the service.

Finally, a policy with regard to Marines who voluntarily self-refer themselves for help is described within the Marine Corps Order:

(9) *Voluntary Self–Referral*

(a) Marines and family members who are potential or actual offenders should be encouraged to seek help at the earliest opportunity. Any Marine, family member, or overseas civilian employee may obtain treatment or aid for a child or spouse problem by means of self-referral. Military members who seek treatment or help for domestic violence problems may initiate the evaluation and intervention process by voluntarily disclosing the nature and extent of their problem to a qualified family advocacy or counseling personnel.

(b) Admission of child or spouse abuse by an offender is sufficient evidence to substantiate a case and requires notification of the member's commanding officer.

(c) Determination as to whether a voluntary self-referral has been made rests with the individual's commanding officer. The clearest case of self-referral occurs when only the offender and victim are aware of the abuse prior to the voluntary disclosure. There are cases in which self-referral, in the strictest sense, cannot be established, such as a member coming forward following a spouse's discovery of child abuse. Consideration should be given for the essentially voluntary nature of this type of disclosure. Early resolution of this issue is required in order to prevent confusion as the case develops.

(d) Voluntary disclosures of child or spouse abuse made by a member to the proper family advocacy or counseling personnel will not be used against the member as the sole source of information upon which to base disciplinary action under the Uniform Code of Military Justice, nor as the sole basis for characterizing a discharge as "Other than Honorable" provided such information is disclosed by the member for the express purpose of obtaining help or treatment. This does not preclude administrative processing or reporting actions which must be taken in compliance with State law, nor is the member protected against possible civilian prosecution.

My examination of the record of trial reveals that appellant acted in reliance upon and in accordance with Marine Corps policy. At the time of his admissions to the sexual abuse of his two daughters he gave the Family Services counselor the Commandant's White Letter No. 2–8C of 26 February 1988, stated he knew "that what he had done was wrong and that he wanted help." Included in the White Letter is the following statement: "Further, those involved in dealing with the Marine accused's offense must be sensitive to the impact of their actions upon the family. In this regard, when determining the course of action to be taken with respect to the offender, I urge you to consider the possibility of noncriminal responses."

For me the evidence contained in the record of trial indicates that appellant falls within the ambit of the above quoted provisions of the Marine Corps policy to treat, rehabilitate and *retain:* appellant voluntarily referred himself by admitting his misconduct, asked for treatment, and began a rehabilitation program at his own expense. Additionally, he successfully participated in the rehabilitation program for at least 14 weeks prior to his court-martial. Competent counselors reported him to have excellent potential for rehabilitation and therefore it could be concluded that he was a candidate for successful treatment. He was the stabilizing influence on his family and was motivated to change his behavior. According to a captain and a staff sergeant, who had known and worked with him for over a year, appellant performed his current duties "extremely well," and in an "excellent to outstanding manner." Appellant was an offender who acknowledged and assumed responsibility for his behavior; his behavior was not compulsive, repeated or represented a specific danger; the children had not suffered serious injury; and it is questionable that there was sufficient evidence for conviction, except for appellant's own admission. Nor was there a demonstration that testifying in court was to the best interest of the children since neither child testified. While his

commanding officer, a lieutenant colonel, testified that appellant had no rehabilitative potential, he based that opinion on the offenses for which the appellant had been convicted and with little interest, recognition and due consideration of the letters from the medical authorities evaluating appellant's treatment status. If the record of trial does not reflect the true state of appellant's case, as gleaned from the stipulated facts, then the Government must accept responsibility for failure to establish the appropriateness of the sentence it seeks to have us affirm.

In light of his record of successful voluntary participation in a treatment and rehabilitation program at his own initiative and expense, as well as his having a "record of positive performance" during his approximately 12 years of active duty, I have determined, pursuant to my Article 66(c), UCMJ, 10 U.S.C. § 866(c), responsibilities, that an approved sentence that includes an unsuspended punitive discharge is an inappropriate sentence. I also believe that such a sentence, in appellant's particular case, is contrary to public policy as reflected in Marine Corps Order 1752.3A. Affirmance of the sentence as approved on review below, or as commuted on our review, will not encourage others with child sexual abuse problems to come forward and seek help through treatment and rehabilitation. Nor will it assist commanders to encourage Marines to come forward for treatment. Neither is the commander's means of providing unit readiness by operating programs to restore families to a healthy state enhanced. If a Marine, particularly a career Marine, runs a substantial risk of being punitively discharged as well as being confined for a long period of time and deprived of the capability of providing financial support for the family as a result of forfeitures or reduction in pay grade, what Marine with a record of long and positive performance of military duties would voluntarily refer himself for treatment and rehabilitation under the Marine Corps program? The consequences for his voluntary self-referral are perceptively as severe as if he had remained silent and risked being caught.

If the Marine Corps determines that it is no longer in the best interests of the Marine Corps to retain Marines who have voluntarily confessed to abusing their children or spouse despite the Marine's record of positive performance and potential for rehabilitation and successful treatment, then the policy established in Marine Corps Order 1752.3A will be modified or cancelled. Until the order is modified or cancelled, however, I believe we must abide by the guidelines of that order. Certainly, a convening authority must not abdicate his court-martial functions because of a policy set forth by a Marine Corps Order. *See United States v. Rivera*, 12 U.S.C.M.A. 507, 31 C.M.R. 93 (1961). On the other hand, this Court cannot put blinders on with regard to that policy when it served as the central factor to motivate appellant's pretrial and post-trial conduct and was the central point of appellant's sentencing presentation and defense counsel's closing argument on sentencing. This Court is required to determine the appropriateness of appellant's sentence, that is, do justice. Article 66(c), UCMJ; *United States v. Healy*, 26 M.J. 394 (C.M.A.1988). When the Marine Corps implements a policy by written order that gives guidance to commanders for their implementation of that policy, and the guidance includes encouraging Marines to confess to crimes with the implicit understanding that, if they fall within certain specified criteria, they will be held accountable but with less severe consequences than if they do not confess but are subsequently caught, then I believe this Court is obliged to examine the appropriateness of the sentence approved by the convening authority in light of that policy. I believe this is particularly required when Marines who fall within the specified criteria of the policy are subjected to sentences substantially similar to those approved for Marines who do not fall within the specified criteria or who got caught. To do otherwise would not be to do justice. In such cases, therefore, I believe this Court must act to correct the injustice. *United States v. Healy.* I find that appellant fits within the specified criteria of Marine

Corps policy. I also find that his approved sentence is as severe as other child sexual abuse cases examined by this Court in the last year and a half (and the least egregious conduct of those I have examined). Finally, since this Court cannot suspend punitive discharges, I find the punitive discharge as approved by the convening authority and as commuted by the majority to be inappropriate.

Accordingly, I would affirm the findings and only so much of the sentence as provides for three years confinement with all confinement in excess of ten months suspended for a period of one year from the date sentence was adjudged, and reduction to pay grade E–1.