**UNITED STATES, Appellee,**

v.

**Staff Sergeant Lester G. ROEMHILDT, 473–86–3400, United States Army, Appellant.**

**ACMR 9202312.**

U.S. Army Court of Military Review.

17 May 1993.

For Appellant: Colonel Malcolm H. Squires, Jr., JAGC (argued); Major Fran W. Walterhouse, JAGC, Captain David L. Thomas, JAGC (on brief).

For Appellee: Captain John G. Giovannelli, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant, pursuant to his pleas, was found guilty, by a military judge sitting as a general court-martial, of two specifications of indecent acts with a child under the age of sixteen, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for one year and one day, and reduction to Private E1. However, in the exercise of his clemency authority, the convening authority suspended execution of the confinement in excess of ninety days for one year.

The appellant requests that this Court establish a judicially mandated "limited use" policy in self-referred child abuse cases, or in the alternative, require the staff judge advocate and the convening authority to affirmatively state in the record of trial that they considered the recommendation of the Family Advocacy Case Management Team (FACMT), if available, in deciding what action, if any, to take against a soldier who self-refers for child abuse. We decline to impose a policy of limited use or to require the affirmative showing of consideration of the FACMT recommendations.

The appellant started to sexually abuse his step-daughter, Stacy, at his duty station in England when Stacy was seven years old, by rubbing her breasts and buttocks and digitally penetrating her vagina. On two occasions, he rubbed his penis on her vagina until he ejaculated. These incidents took place approximately once a month until March 1991 when the appellant's wife suspected the appellant's actions with Stacy. She confronted him with her suspicions; he admitted his actions and promised both his wife and Stacy that he would stop. Unfortunately, he continued his activities.

On 24 and 25 June 1992, after the appellant and his family had been transferred to Fort Huachuca, Arizona, the appellant again rubbed Stacy's buttocks and breasts. On 25 June 1992, Stacy, now ten years old, reported the touching to her mother. The appellant's wife again confronted him with Stacy's allegations and the appellant again admitted his indecent acts. He then sought counseling, first from his chaplain and then from a local community-based agency. Under the laws of Arizona, the agency was required to report the appellant's action to the local authorities who notified military authorities. The appellant was charged with the indecent act offenses.

The Article 32, UCMJ, investigating officer, heard testimony from a U.S. Army Social Worker, Ms. Pike, as well as Stacy and her mother. He recommended trial by special court-martial empowered to adjudge a bad-conduct discharge. He further recommended that:

> [B]ased on information gathered during the conduct of the formal investigation that confinement of SSG Roemhildt would prove detrimental to the counseling required for rehabilitation [sic]. Ad-

ditionally, the needs and requirements of the Roemhildt family should be considered in whatever form of punishment is set forth by the convening court-martial.

The appellant's company commander and the brigade commander, who was also the special court-martial convening authority, both recommended trial by a special court-martial empowered to adjudge a bad-conduct discharge. The battalion commander recommended a general court-martial. The staff judge advocate, "after thorough consideration of the evidence attached to the recommendations, and having considered those recommendations, and the seriousness of the offenses," recommended trial by general court-martial. The convening authority stated that he approved the recommendations of the staff judge advocate and referred the case to trial by a general court-martial.

In the sentencing portion of the trial, the military judge heard testimony from witnesses who recommended that incarceration would not be an appropriate disposition for the appellant. The appellant was also portrayed by his supervisors as an excellent soldier with a bright future in the Army. Ms. Pike's testimony is indicative of the approach recommended by these witnesses:

> He voluntarily asked for help. You know, we, know, statistically, today that one out of three females is sexually assaulted before age 18 and one out of five males is sexually assaulted before age 18. Obviously some of those sexual assaults take place in the home. I we [sic] say to people, "You come forward and you report", and then we put them in prison, the message is we're condemning children to continue to be molested because no one is going to come forward because they don't want to go to prison.... What a crazy message to send to people.

After sentencing the appellant as noted above, the military judge stated:

> I was very much impressed with the sentencing evidence in this case. Surely the acts of this kind are detestable and repugnant to society and certainly deserv-

ing of severe punishment. Yet, the facts of this case convince me that rehabilitation must be the clear focus of punishment in this case, that the military concerns must be best served by the mending process.

Accordingly, I strongly recommend to the Convening Authority, and I emphasis the word, "strongly", that the adjudged confinement and discharge be suspended for a long enough period to ensure that Staff Sergeant Roemhildt is well on his way to recovery and that it be suspended by the Convening Authority under such conditions as to promote rehabilitation and deter recidivism.

In making that recommendation I find the following facts:

one, that Staff Sergeant Roemhildt is a good soldier;

two, that he is basically a right-thinking, right-doing good person;

three, that he appreciates the wrongfulness of his conduct and genuinely seeks to modify his behavior;

four, that he is a regressed offender;

five, that he poses no danger to other children;

six, that he voluntarily disclosed his wrongdoing and sought to—sought help to change his behavior;

seven, that because of his intelligence, his desire and his character he is an excellent candidate for rehabilitation.

In his initial recommendation to the convening authority under Rule for Courts–Martial 1106 [hereinafter R.C.M.], the staff judge advocate recommended that the sentence be approved as adjudged because of "the repetitive nature and the seriousness of the offenses committed by SSG Roemhildt warrant the sentence as adjudged." The trial defense counsel submitted extensive clemency matters to the convening authority under R.C.M. 1105 and 1106. This material included letters from the appellant's wife, his in-laws, his civilian attorney, health professionals that were treating the appellant, his daughter, his pastor, and fellow workers. Their basic recommendation was that the appellant not be incarcerated

because that would not assist the rehabilitation of either the appellant or the family.

Based on this material, the staff judge advocate changed his recommendation to recommend that the convening authority approve the sentence as adjudged but suspend for one year the execution of confinement in excess of ninety days. The convening authority approved the recommendation of the staff judge advocate.[1] In this case, we have the recommendation of the community treating the soldier accused of child abuse, usually the professional health care providers or chaplains, pitted against the recommendation of the staff judge advocate, the representative for the law, order and discipline in the Army community. The convening authority is the arbiter between these two opposing sides.

While it may be argued that the appellant referred himself for treatment only after his wife discovered his activities with Stacy, we agree with the findings of the military judge that the appellant referred himself for treatment because he wanted help with his problem. We also find that the staff judge advocate and the convening authority knew of and considered the recommendation of the health care professionals that the appellant not be court-martialed prior to exercising prosecutorial discretion in referring the case to trial. We further find that the staff judge advocate and the convening authority considered all the relevant material, including the recommendation of the military judge and the health care and pastoral experts, in determining to grant clemency, albeit not as much clemency as they had recommended.

■ The Army policy on child and spouse abuse is contained in Army Reg. 608–18, Personal Affairs: The Army Family Advocacy Program (10 Oct. 1987) [hereinafter AR 608–18]. The policy is to prevent spouse and child abuse, protect those that are victims of such abuse, and treat family members affected by abuse. AR 608–18, para. 1–4a. The program is designed to break the cycle of abuse by identifying abuse as early as possible and providing treatment for affected family members. AR 608–18, para. 1–4c. The objectives of the program are prevention, encouragement of reporting of abuse, prompt investigation of abuse, and treatment of affected persons. AR 608–18, para. 1–5. It encourages voluntary self-referral through education and awareness programs. AR 608–18, para. 1–5f. It requires installation commanders, AR 608–18, para. 1–7a(6), and unit commanders, AR 608–18, para. 1–7b(5), to consider FACMT recommendations before recommending disciplinary or administrative actions. Chapter 4, AR 608–18, outlines the factors for commanders to consider in determining whether disciplinary or administrative action is appropriate. The disciplinary policy is that there is a program of rehabilitation and treatment which does not preclude disciplinary or administrative action. AR 608–18, para. 4–4. In fact, the regulation does not provide a soldier accused of child or spouse abuse any procedural right or privilege. AR 608–18, para. 4–1. The entire tenor of the regulation is that the commander, in the exercise of his discretion, can take appropriate disciplinary and administrative action, even against soldiers who self-refer themselves for treatment.

■ The Army has limited use policies for soldiers who refer themselves for treatment for drug or alcohol abuse. *See* Army Reg. 600–85, Personnel–General: Alcohol and Drug Abuse Prevention and Control Program, paras. 6–3, 6–4 (21 Oct. 1988). This policy prohibits using statements made by the soldier in his self referral in disciplinary or administrative proceedings. There is an even broader limited use policy for HIV positive soldiers. Army Reg. 600–110, Personnel–General: Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV), para. 6–4 (11 Mar. 1988). This policy prohibits the use in adverse action of any information obtained in an epidemiologic assessment concerning a sol-

---

1. The appellant had served 83 days of his confinement when the convening authority took action.

dier's personal use of drugs or consensual sexual activity.

The United States Marine Corps has a slightly different program on child abuse as outlined in Marine Corps Order 1752.3A, 6 April 1987, and a letter from the Commandant, White Letter No. 2–88 (Subject: Command Support for Families in which Child Sexual Abuse has Occurred), dated 26 February 1988. *See United States v. Bell,* 28 M.J. 1062 (N.M.C.M.R.1989) (Albertson, Judge, concurring in part and dissenting in part). While the policy and objectives of the Marine Corps are the same as the Army, the Marines have instituted a limited use policy for Marine child abusers who self-refer.

We now turn to the contentions of the appellant in this case. To narrow the issues, it is helpful to understand what the appellant does not contend. He does not contend that the staff judge advocate or the convening authority did not follow the requirements of the UCMJ or AR 608–18. He does contend that to prosecute him for child abuse after he turned himself in is in some sense a vindictive prosecution. He wants this Court to promulgate for the Army a limited use policy like that of the Marine Corps as well as direct that staff judge advocates and convening authorities affirmatively state they have considered the recommendations of the FACMT and why they deviated from those recommendations.

█ The appellant urges that this Court judicially promulgate the same limited use policy as the Army has for drug and alcohol abuse, and for HIV infected soldiers, and the Marines have for child abusers. However, we see a big difference between the child abuser and the drug or alcohol abuser or HIV positive soldier. In the child abuse case, there is always a victim, usually a child who has little opportunity to protect himself or herself. In the drug and alcohol abuse case or the HIV positive soldier, there is not necessarily a victim of that soldier's abuse or positive factor. This big difference may necessitate that there be no limited use policy for self-referred child abusers. Additionally, a pol-

icy that the leadership of the Marine Corps may think is appropriate for that service may not be considered appropriate by the Army leadership for the Army. Accordingly, we will not impose a limited use policy for the Army in child abuse cases.

Whatever the merits of the appellant's argument that there should be a limited use policy in the Army for self-referred child abusers, this Court is not the proper forum for those arguments. Those arguments should be made to the proponent of AR 608–18. The proponent can weigh the merits of the case and the needs of the Army and determine the appropriate policy.

█ We also will not direct that a staff judge advocate or the convening authority affirmatively state that he has considered the recommendation of the FACMT. The burden is on the appellant to bring these matters to the attention of the convening authority. There are adequate procedural protections under the UCMJ for these matters to be considered. Counsel for soldiers similarly situated as the appellant can do as masterful a job as did appellant's counsel of getting information to the convening authority prior to the decision to refer the case to trial as well as prior to taking clemency action.

The findings of guilty and the sentence are affirmed.

Judge DELL'ORTO concurs.

GONZALES, Judge, concurring:

Since 1987, when AR 608–18 was issued as a new regulation, the incidence of child abuse that have been referred to a court-martial have been on the rise. During fiscal year 1992, ten percent of the court-martials in the United States Army involved child abuse offenses. This is alarming.

Voluntary self-referral is one of six measures listed in paragraph 1–5, AR 608–18, to meet the objectives of the Family Advocacy Program of preventing future child abuse and treating family members so that the family can be restored to a health state. I agree that voluntary self-referral should be encouraged. However, voluntary self-

referral cannot be expected to be a viable option for a soldier without a concomitant "limited use" policy. A case like the instant one, where a soldier seeks help for his unacceptable behavior and then finds himself before a court-martial four months later, has a chilling effect on others to come forward. Likewise, our affirmance of the sentence will not encourage those with child abuse problems to seek help through treatment and rehabilitation.

The Army has existed without a "limited use" policy for child abuse cases during the past five and a half years under AR 608–18. I agree with my brothers that it would not be appropriate for this Court to impose such a policy for the Army. The proponent of AR 608–18 should take the time to seriously consider a "limited use" policy similar to the one that currently exists in the Marine Corps. To enhance identification and prevention of child abuse, the consequences for a soldier's voluntary self-referral should not be as severe as if he had remained silent and risked being caught. From a court-martial statistical point of view, the time to weigh the merits of implementing a "limited use" policy is now.