**UNITED STATES, Appellee**

v.

**Todd M. CORCORAN, Sergeant,
U.S. Army, Appellant.**

No. 93–1102.
CMR No. 9201510.

U.S. Court of Military Appeals.

Argued May 31, 1994.

Decided Sept. 22, 1994.

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel Dayton M. Cramer, Major Joseph C. Swetnam, Major James L. Pohl* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of sodomy with a child (2 specifications) and committing indecent acts with his 9–year–old stepdaughter (3 specifications), in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement for 10 years, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in a summary opinion.

This Court granted review of the following issues:

I

WHETHER THE GOVERNMENT VIOLATED THE IMPLIED LIMITED USE POLICY UNDER AR 608–18 BY USING APPELLANT'S STATEMENTS, AND THE EVIDENCE PROCURED AS A RESULT OF THOSE STATEMENTS, AGAINST HIM IN VIOLATION OF THE FIFTH AMENDMENT.

II

WHETHER THE ACTION IN APPELLANT'S CASE COMPLIES WITH ARMY POLICY SET OUT IN AR 608–18 OR THE TENETS OF *UNITED STATES V. BELL*, NO. 891067R, UNPUBLISHED (JUL. 31, 1989).

*Factual Background*

For Appellant: *Captain Roy H. Hewitt* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel James H. Weise, Major Fran W. Walterhouse, Captain David L. Thomas* (on brief); *Colonel Malcolm H. Squires* and *Captain Teresa L. Norris.*

Appellant sexually abused his 9–year–old stepdaughter by touching and licking her vagina and allowing her to lick his penis. He knew that his stepdaughter previously had been sexually abused by a 12–year–old uncle, a former stepfather, and a baby-sitter.

After admitting his misconduct to his wife and asking her to help him, he contacted his chaplain, who referred him to the Nuremberg Psychiatric Clinic. Appellant admitted his offenses to a psychologist. The psychologist reported "a possible sexual assault on a child" to a member of the hospital headquarters staff, who in turn notified Special Agent (SA) Warren, an agent of the U.S. Army Criminal Investigation Command (CID). On April 27, 1992, SA Warren interviewed appellant, and appellant confessed.

Charges were preferred on April 28. On May 1, appellant submitted a written request to his battalion commander that he be placed in pretrial confinement so that the German child welfare authorities would not remove his 2–month–old from the custody of his wife. That request apparently was denied, since the charge sheet reflects no pretrial restraint.

Also on May 1, trial defense counsel requested a psychiatric examination of appellant pursuant to RCM 706, Manual for Courts–Martial, United States, 1984. The general court-martial convening authority granted the request on May 19. The psychiatrist's report was submitted to defense counsel on June 3, 1992. The psychiatrist found that appellant was mentally responsible for the offenses and mentally capable of standing trial. The diagnosis was as follows:

> DSM III 309.00 Adjustment Disorder with depressed mood. Alcohol abuse, episodic, by history. This individual did not show repetitive preference and chronic pattern of sexual activity involving children as an exclusive method of achieving sexual excitement. Therefore, there is no Pedophilia diagnosis.

On May 4, appellant requested discharge for the good of the service in lieu of court-martial. His request was denied by the general court-martial convening authority on May 7.

The investigation under Article 32, UCMJ, 10 USC § 832, commenced on May 12. The investigating officer submitted his report recommending trial by general court-martial on May 22. The charges were referred to a general court-martial on June 30, 1992.

Trial commenced on July 14, 1992. At trial appellant made no motions to suppress evidence or for other appropriate relief. He pleaded guilty pursuant to a pretrial agreement.

After the trial, appellant submitted a request for clemency, requesting that the convening authority reduce the confinement from 10 to 5 years and reduce the dishonorable discharge to a bad-conduct discharge. Appellant did not request suspension or remission of the punitive discharge.

Attached to the clemency request was the psychiatric evaluation concluding that "there is no Pedophilia diagnosis." Also attached to the clemency request were letters from appellant's supervisors, including a captain, a chaplain, appellant's first sergeant, and two noncommissioned officer supervisors, attesting to his outstanding duty performance.

After the clemency request was submitted, the staff judge advocate submitted an addendum to his post-trial recommendation, advising the convening authority that RCM 1107 required him to consider the defense request for clemency prior to taking action on the case. Without setting out any reasons, the staff judge advocate adhered to his original recommendation that the convening authority approve the adjudged sentence.

*Issue I: Use of Appellant's Statements*

Although he did not raise the issue at trial, appellant now challenges the propriety of his prosecution and conviction. Appellant asserts that his prosecution violated Department of Defense (DoD) Directive 6400.1, *Family Advocacy Program (FAP)* (June 23, 1992), and Army Regulation (AR) 608–18, *The Family Advocacy Program* (September 18, 1987). He asserts that there is an express policy encouraging voluntary self-referral of child abusers and an implied policy against using incriminating admissions against soldiers who voluntarily seek treatment. Appellant concedes that neither DoD Directive 6400.1 nor AR 608–18 contain an explicit limited-use policy protecting disclosures to medical personnel or others involved in the Family Advocacy Program. He ar-

gues, however, that "due process considerations mandate the establishment of a limited-use policy in child abuse cases." Final Brief at 14. He asks this Court "to impose such a substantive rule of evidence on the Army judicial system." *Id.* at 15. Although his argument is phrased in terms of an evidentiary rule, he also argues that the prosecution itself should be barred.

DoD Directive 6400.1 was issued 7 days before appellant's case was referred to a general court-martial. Paragraph B.4 of DoD Directive 6400.1 provides:

This Directive ... [p]rovides only internal DoD guidance to protect and assist actual or alleged victims of child and spouse abuse. *It is not intended to and does not create any rights, substantive or procedural, enforceable at law by any victim, witness, suspect, accused, or other person in any matter, civil or criminal ....*

(Emphasis added.)

Paragraph D.5 provides: "It is DoD policy to ... [p]rovide programs of rehabilitation and treatment for child and spouse abuse problems. *Such programs do not prevent appropriate administrative or disciplinary action.*" (Emphasis added.)

Paragraph E.2.m requires the secretary of each military department to "[d]evelop specific criteria for retaining members in military service who have been involved in an incident of substantiated abuse."

Paragraph F.1 provides as follows:

When an act of abuse ... allegedly has occured, the local FAP office shall be notified immediately and shall, in turn, ensure implementation of the following procedures:

a. Medical assessment and treatment for all family members by appropriately trained personnel.

b. Notification of the Service member's commanding officer.

c. Notification of military law enforcement and investigative agencies.

d. Notification of the local public child protective agency (in alleged child abuse cases only) in the United States and where covered by agreement overseas.

e. Observance of the applicable rights of the alleged offenders.

Appellate defense counsel have represented that, as of the date of referral, AR 608–18 remained in effect but had not been reissued or updated as a result of the reissuance of DoD Directive 6400.1. Paragraph 1–4 of AR 608–18 sets out Army policy. It provides in pertinent part as follows:

a. [Department of the Army] policy is to prevent spouse and child abuse, to protect those who are victims of abuse, to treat families affected by abuse, and to assure that there are personnel who are professionally trained to intervene in abuse cases. Since many incidents of abuse constitute violations of the law, *DA policy also recognizes a commander's authority to take disciplinary or administrative action in appropriate cases.*

\* \* \*

c. The [Family Advocacy Program] is designed to break the cycle of abuse by identifying abuse as early as possible and providing treatment for affected family members.

(Emphasis added.)

Paragraph 1–5 of AR 608–18 sets out the objectives of the Family Advocacy Program, which are

to prevent spouse and child abuse, to encourage the reporting of all instances of such abuse, to ensure the prompt investigation of all abuse cases, to protect victims of abuse, and to treat all family members affected by or involved in abuse so that those families can be restored to a healthy state.

Paragraph 1–5 also mandates that the Family Advocacy Program provide several enumerated services. Included are mandates to

e. Provide treatment services to soldiers and their families involved in family violence in order to strengthen the family and prevent the recurrence of abuse.

f. *Encourage voluntary self-referral through education and awareness programs.*

(Emphasis added.)

Appellant's arguments raise two questions: (1) Did appellant's prosecution violate a pro-

hibition on use of his admissions to the psychologist and the CID agent? and (2) Did appellant's prosecution violate a prohibition against prosecution based on a voluntary self-referral? We answer both questions in the negative.

### A. Prohibited Use of Admissions

■ At the outset we note that appellant's conviction was based on his pleas of guilty, not his admissions to the psychologist or the CID. RCM 910(j) provides that, in the absence of a conditional plea under RCM 910(a)(2), "a plea of guilty which results in a finding of guilty waives any objection, whether or not previously raised, insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made." Similarly, Mil.R.Evid. 304(d)(5), Manual, *supra*, provides that, except for cases involving a conditional plea, "a plea of guilty to an offense that results in a finding of guilty waives all privileges against self-incrimination and all motions and objections under this rule with respect to that offense regardless of whether raised prior to plea." Since appellant entered unconditional pleas of guilty to all offenses and was convicted on the basis of his pleas, we hold that appellant waived any evidentiary objection to his incriminating statements. *See United States v. Hinojosa,* 33 MJ 353 (CMA 1991) (objections to admissibility of confession foreclosed by unconditional guilty plea).

### B. Prohibition from Prosecution

Appellant suggests that he should be immune from prosecution based on his voluntary self-referral for child abuse. *See United States v. Spence,* 29 MJ 630, 635–36 (AFCMR 1989) (prosecution barred by promise to self-referred child abuser that he would not be prosecuted). If DoD Directive 6400.1 or AR 608–18 extend a promise to self-referred child abusers that they will not be prosecuted, such immunity would extend not only to admissions made during the self-referral process but also to a decision to prosecute based solely on those admissions. *See United States v. Olivero,* 39 MJ 246 (CMA 1994); *Cunningham v. Gilevich,* 36

MJ 94 (CMA 1992); *United States v. Kimble,* 33 MJ 284 (CMA 1991).

■ Ordinarily, a motion to dismiss based on a grant of immunity is waived if not made prior to entry of pleas. RCM 905(e); RCM 907(b)(2)(D)(ii). Nevertheless, a Constitutional challenge to the Government's right to prosecute is not precluded by a guilty plea. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). Accordingly, since appellant asserts a violation of Constitutional due process, we will review his argument on its merits.

■ AR 608–18 recently was considered by the Court of Military Review in *United States v. Roemhildt,* 37 MJ 608, 611 (ACMR 1993). We agree with that court's conclusion that AR 608–18 does not preclude disciplinary action against self-referred child abusers. The United States Navy–Marine Corps Court of Military Review has considered the Marine Corps policy regarding self-referred child abusers and reached a similar conclusion. *See United States v. Bledsoe,* 39 MJ 691, 694 (1993) (Marine Corps child-abuse treatment policy "set forth no bar to trial, whether or not the accused was a self-referred child abuser.").

■ Nevertheless, appellant argues that, even if DoD Directive 6400.1 or AR 608–18 does not confer immunity, this Court should judicially mandate an evidentiary rule against prosecution based solely on evidence obtained during the self-referral process. We do not dispute the strong policy arguments advanced by appellant and the thoughtful comments by Judge Gonzales in his concurring opinion in *United States v. Roemhildt, supra* at 612, but we decline to judicially mandate Army policy. While the Defense Department and Army policy may be internally inconsistent in that they both encourage and deter self-referral, they do not infringe on any rights recognized by the Constitution, the UCMJ, or decisions of this Court. *See* Mil.R.Evid., Section V (no privilege for disclosures to medical care providers).

*Issue II: Failure to Consider Regulatory Criteria in the Disposition of Charges.*

There is no reference to DoD Directive 6400.1, AR 608–18, the Family Advocacy Program (FAP), or the Family Advocacy Case Management Team (FACMT) in the staff judge advocate (SJA)'s pretrial advice, the convening authority's referral order, the SJA's post-trial recommendation, or the convening authority's action. Appellant asserts that the failure of the record of trial to reflect FACMT recommendations and the convening authority's consideration of the regulatory criteria required by DoD Directive 6400.1 and set out in AR 608–18 entitles him to relief. He asks this Court to set aside his conviction and dismiss the charges, or to return the case to the convening authority for compliance with DoD Directive 6400.1 and AR 608–18.

Paragraph F.3 of DoD Directive 6400.1 mandates that the following factors "shall be considered in determining dispositions" of child and spouse abuse:

a. Military performance and potential for further useful service.

b. Prognosis for treatment as determined by a clinician with expertise in the diagnosis and management of the abuse at issue (child abuse, child neglect, child sexual abuse, and/or spouse abuse).

c. Extent to which the alleged offender accepts responsibility for his or her behavior and expresses a genuine desire for treatment.

d. Other factors considered to be appropriate by the command.

Paragraphs 1–7a(6) and 1–7b(5)(b) of AR 608–18 require Army commanders to "[c]onsider [Family Advocacy Case Management Team] recommendations when taking or recommending disciplinary and administrative actions" in child-abuse cases.

Paragraph 4–4, AR 608–18, provides as follows:

b. Consistent with the interests of justice and the needs of the accused, the commander should consider the following before taking or recommending disciplin-ary and administrative actions against soldiers in spouse or child abuse cases:

(1) The seriousness of the alleged offense and the weight and availability of the evidence supporting it.

(2) Matters in aggravation or extenuation surrounding the commission of the alleged offense.

(3) Matters in mitigation including, but not limited to the following:

(a) The accused's military record and potential for further service.

(b) The manner in which the abuse was discovered (i.e., was the abuse uncovered during a self-referral or as a result of a report to or investigation by the military police).

(c) The accused's potential for rehabilitation based on the recommendation of the FACMT.

(4) The impact that disciplinary and administrative action against the soldier will have on his or her treatment.

c. When disciplinary or administrative action against a soldier is determined to be appropriate, the commander should consider the recommendations of the FACMT regarding retention of the soldier in the Army, protection of the victim from further abuse, and maintenance of the family.

d. When disciplinary or administrative action against the soldier is determined to be appropriate, and where the soldier is determined to be treatable and has demonstrated rehabilitative potential for further service, a commander may choose to take appropriate action to allow successful completion of a treatment program and continued service.

Appellant asserts that the convening authority violated DoD Directive 6400.1 and AR 608–18 by subjecting him to disciplinary action without considering the criteria set out in the Army Regulation. He bases his factual assertion on the absence of any mention of the regulatory criteria in the SJA's pretrial advice, the convening authority's referral order, the SJA's recommendation, or the convening authority's action. He bases his legal argument on this Court's remand order in *United States v. Bell*, 30 MJ 168 (1990) (sum-

mary disposition), and the Court of Military Review's decision on remand in *United States v. Bell,* No. 891067R, unpub. (July 31, 1991) (see appendix), *on further review,* 39 MJ 684 (NMCMR 1993). He argues that these 1990 and 1991 decisions establish a legal requirement that the convening authority apply the regulatory criteria set out in paragraph 4–4 of AR 608–18, and if disposition by court-martial is considered appropriate, articulate why an accused should not be retained and treated instead of punitively discharged. Final Brief at 22–23.

We reject appellant's legal and factual arguments, for the following reasons.

■ First, there is nothing in DoD Directive 6400.1 or AR 608–18 that makes a FACMT recommendation a condition precedent to disposition by court-martial.

■ Second, nothing in the DoD Directive or the Army Regulation immunizes a soldier from disciplinary action, even if that soldier is determined to be treatable and suitable for rehabilitation. To the contrary, they explicitly state that disciplinary action is not precluded by entry into a treatment program.

■ Third, the criteria in AR 608–18 are not significantly different from the criteria to be considered by the convening authority in every case. *See* RCM 601(d)(1), Discussion ("The convening authority should consider the options and considerations under RCM 306 in exercising the discretion to refer."); RCM 306(b), Discussion (commander should consider the character and military service of accused, nature and circumstances of offense, appropriateness of authorized punishment, cooperation by accused, availability and admissibility of evidence).

■ Fourth, there is no requirement in the Uniform Code of Military Justice or the Manual for Courts–Martial that a staff judge advocate or a convening authority set out the reasons why disciplinary action was determined to be appropriate. RCM 406(b) sets out the required contents of the SJA's pretrial advice. The SJA is only required to set out a conclusion as to whether each specification alleges an offense, whether each specification is warranted by the evidence, whether

the court-martial has jurisdiction, and a recommendation of the action to be taken. While the SJA may include a discussion of extenuating, mitigating, and aggravating factors, and the recommendations of the chain of command or others, there is no legal requirement to do so. RCM 406(b), Discussion. Nonjurisdictional defects in the preferral, forwarding, and referral process are waived if not raised prior to entry of pleas. RCM 905(e). Accordingly, even if appellant's commander had failed to follow the mandate of AR 608–18 to consider FACMT recommendations, any error based on such failure was waived by appellant's failure to raise it.

■ Fifth, there is no requirement that the SJA list the criteria for determining an appropriate action on the sentence. The burden is on the defense "to take steps to ensure that matters it wants considered are presented to the convening authority." Drafters' Analysis of RCM 1105, Manual, *supra* at A21–72. *See* RCM 1106(d)(4) (SJA's rationale concerning legal issues not required to be stated); RCM 1107(f)(4)(B) ("no reasons need be stated" for convening authority's decision whether to suspend or execute punishment).

■ Sixth, there is no requirement in the UCMJ or the Manual for Courts–Martial that the record of trial reflect the FACMT recommendations or the convening authority's consideration of those recommendations. The absence of evidence does not prove noncompliance. Whether there was a FACMT recommendation in this case cannot be determined from the record. To the extent that the record is silent on this issue, it is because appellant did not raise and litigate at trial the issue whether the convening authority obtained and considered FACMT recommendations or call the convening authority's attention to any such matters in his post-trial submission.

Seventh, as intended by the drafters of RCM 1105, the evidence regarding appellant's potential for rehabilitation and treatment was presented to the convening authority by defense counsel in appellant's post-trial submission. At no time did appellant

ask the convening authority to retain and treat him.

▮ Eighth, our remand order in *Bell* did not establish a requirement in all cases for either the SJA or the convening authority to recite compliance with DoD Directive 6400.1 or applicable service regulations. Our remand order was purely for factfinding. Unlike appellant's case, all three judges of the United States Navy–Marine Corps Court of Military Review who participated in *Bell* considered the sentence approved by the convening authority to be inappropriate in part. Judge Albertson's separate opinion concluded that the unsuspended punitive discharge in *Bell* was not appropriate in light of Marine Corps policy regarding treatment and rehabilitation of self-referred child abusers. *See United States v. Bell*, 28 MJ 1062, 1063, 1066 (1989) (Albertson, J., concurring in part and dissenting in part). This Court directed the NMCMR to use its factfinding powers to "reexamine the facts and circumstances of this case." 30 MJ 168.

Pursuant to our remand order, the NMCMR examined the record but could not determine whether Staff Sergeant Bell's sentence to a punitive discharge was consistent with Marine Corps policy. That court noted, however, that "[t]he overall sense of the [Marine Corps] order, however, is that if the Marine abuser meets the criteria set forth for the commander to use in exercising his discretion, ... the Marine should be retained on active duty to meet his responsibilities under the order." *United States v. Bell*, No. 89 1067R, unpub. op. at 2 (see appendix). Accordingly, the NMCMR ordered that the record be remanded to the convening authority for review in light of Marine Corps policy. The NMCMR ordered the convening authority to "articulate the reasons the appellant does or does not fall under the terms of the Order and White Paper" setting out Marine Corps policy. Unpub. op. at 4 (see appendix).

Our remand order and the NMCMR's subsequent decision in *Bell* do not compel the same result in appellant's case. The factual inquiry in *Bell* dealt only with sentence appropriateness in the context of Marine Corps policy. The convening authority's recital of policy mandated by the NMCMR in *Bell* was not mandated by this Court. If the NMCMR desires to mandate a convening authority's recital of compliance in every case to aid them in determining sentence appropriateness, they have authority to do so. *See United States v. Johnson*, 21 USCMA 270, 45 CMR 44 (1972). We decline to mandate the same requirement for other services.

### Conclusions

To the extent that appellant asserts a jurisdictional bar to prosecution, we hold that his assertion is without merit. To the extent that he asserts defects in the pretrial advice, referral, or post-trial recommendation, we hold that he waived the issue. RCM 905(e) and 1106(f)(6). We cannot and need not determine if all requirements of DoD Directive 6400.1 and AR 608–18 were followed in this case. We decline to mandate that the record of trial contain a recital of compliance with DoD Directive 6400.1 and AR 608–18 in self-referred child abuse cases.

### Decision

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.

APPENDIX

### DEPARTMENT OF THE NAVY
### OFFICE OF THE JUDGE ADVOCATE GENERAL
### 200 STOVALL STREET
### ALEXANDRIA VA 22332-2400

## IN THE U.S. NAVY-MARINE CORPS COURT OF MILITARY REVIEW
## BEFORE

E. M. ALBERTSON          R. A. JONES          T. A. LAWRENCE

## UNITED STATES
## V.

James C. BELL, 420 92 2335
Staff Sergeant (E-6), U. S. Marine Corps

NMCM 89 1067R                              Decided 31 July 1991

Sentence adjudged 17 November 1988. Military Judge: H R Sims. Review pursuant to Article 66(c), UCMJ, of General Court-Martial convened by Commanding General, 2d Marine Aircraft Wing, FMF, Atlantic, Marine Corps Air Station, Cherry Point, NC 28533-6001.

LT WADE W. PARRISH, JAGC, USNR, Appellate Defense Counsel
LCDR J. RICHARD CHEMA, JAGC, USN, Appelalte Government Counsel

ALBERTSON, Senior Judge:

The U.S. Court of Military Appeals, 30 M.J. 168 (C.M.A. 1990), set aside our decision in this case, 28 M.J. 1062 (N.M.C.M.R. 1989), and remanded it to us for proceedings in accordance with Article 66, Uniform Code of Military Justice (UCMJ) with specific directions to re-examine, through our fact-finding powers, the facts and circumstances of this case and determine:

   I.   WHETHER APPELLANT'S CASE SHOULD HAVE BEEN TREATED UNDER THE TERMS OF MARINE CORPS ORDER 1752.3A AND THE POLICY STATEMENT OF THE COMMANDANT OF THE MARINE CORPS IN HIS WHITE LETTER NO. 2-88 OF FEBRUARY 26, 1988.

   II.   WHETHER APPELLANT MEETS THE CRITERIA FOR TREATMENT CONTEMPLATED BY THE COMMANDANT'S POLICY AND, IF SO, HOW THAT POLICY WOULD APPLY TO THE FACTS OF THIS CASE.

   III.   WHETHER, IN THE EVENT APPELLANT DOES NOT MEET THE CRITERIA FOR CONSIDERATION UNDER MARINE CORPS POLICY, THE RECORD OF TRIAL SHOULD BE REMANDED TO THE CONVENING AUTHORITY FOR FURTHER CONSIDERATION IN LIGHT OF THE FACT THAT "THE . . . SENTENCE HE HAS APPROVED IS INAPPROPRIATE" AND WITH DIRECTIONS THAT NO SENTENCE BE APPROVED IF IT INCLUDES PUNISHMENT GREATER THAN A DISCHARGE SUSPENDED UNDER PROPER CONDITIONS.

The Commandant's White Letter incorporated Marine Corps Order (MCO) 1752.3A when it mandated that commanders become familiar with the "applicable law and regulation" governing child abuse and the procedures to be followed by commanders when such identification occurs. We have reviewed the contents of MCO 1752.3A and the Commandant's White Letter No. 2-88 and arrive at the following analysis.

## A. MCO 1752.3A

MCO 1752.3A, is entitled "Marine Corps Family Advocacy Program." The order publishes "policies, procedures, and guidance for the operation of the Marine Corps Family Advocacy Program" and is intended "to inform commanders of their roles and responsiblities" in that program. Its principal concern is the prevention and identification of child neglect and child abuse for the protection of dependent children. Specifically, the order condemns "[a]cts of child neglect, child abuse, and spouse abuse" because they "are incompatible with the high standards of professional and personal discipline of members of the U. S. Marine Corps." Its principal objective is for commanders to prevent, evaluate, identify, intervene, treat, rehabilitate, follow up, and report child and spouse abuse. The treatment and rehabilitation of Marines who are proven performers are two methods the commander is directed to use in meeting his responsibility of attaining its principal objective in individual cases. To that end, the order provides specific guidance for the commander to identify a proven performer with potential for treatment and rehabilitation. Paragraph 4e and f, MCO 1752.3A. The commander and individual Marine have a mutual responsibility under the program established by the order as a whole and particularly under paragraphs 4e, 6e, 7b, 9b(5)(c) and (d), and 9b(9)(a) and (i).

Our review of the Marine Corps Order leaves us uncertain as to its relationship to military justice proceedings. It appears to give the commander complete discretion, yet it also gives specific guidance as to how he is to exercise that discretion. Furthermore, it appears to give him three options: do nothing, take administrative action--whatever that might entail--or take disciplinary action. The overall sense of the order, however, is that if the Marine abuser meets the criteria set forth for the commander to use in exercising his discretion in determining which option would be appropriate, the Marine should be retained on active duty to meet his responsibilities under the order. We are also uncertain as to what consequences, if any, obtain if a commander ignores the order, makes some arbitrary decision during his application of the order to the facts, or follows the order precisely but fails to retain the Marine (even by means of suspending any punitive discharge adjudged with specific conditions for participating in treatment and rehabilitation programs) despite the fact the Marine is a good performer who self-referred to appropriate authorities and meets the other criteria of the order, including the potential for successful treatment and rehabilitation. Because the Marine child abuser's successful treatment and rehabilitation often is an integral part of the treatment and rehabilitation of the victim and the victim's family, he derives a benefit from the order. The convening authority's consideration or non-consideration of the order is critical in determining whether the Marine is entitled to any benefit from it under the law.

## B. WHITE LETTER NO. 2-88

The Commandant's White Letter No. 2-88, dated 26 February 1988, is entitled "Command Support for Families in which Child Sexual Abuse Has Occurred." The letter is intended to inform commanders of the growing problem of child sexual

abuse and that the time has come for them "to recognize that such behavior occurs within Marine families and to take up the challenge of meeting the needs of such families." The entire thrust of the letter is directed at helping the victims and the families of victims "to ensure that the physical well-being of the child victim is protected and that trauma to that victim and the other family members is minimized." The letter encourages commanders of identified Marine child abusers to be "sensitive to the impact of their actions upon the family." The letter urges commanders to consider a non-criminal response when that would be in the best interests of the family. We find the letter on its face is not intended to protect the personal liberties or interests of the appellant. Although the policy statement appears instead to be aimed at command support for child abuse victims and offers suggestions as to how to provide that support, its incorporation of the Marine Corps Order bears on whether the child abuser should be prosecuted. In fact, its sole reference to action that should be taken regarding the child abuser encourages consideration of whether it will enhance the interests of the victim's family. See United States v. Harrison, 19 U.S.C.M.A. 171, 41 C.M.R. 179 (1970). As a result, when the child abuser is a member of the victim's family, disposition of his case affects the best interests of the family.

## C. THE APPLICABLE LAW

The Supreme Court has held that the government must abide by its own regulations when "the underlying purpose of such regulations is the protection of personal liberties or interests." United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); United States v. Russo, 1 M.J. 134, 135 (C.M.A. 1975); United States v. Anderson, 12 M.J. 527 (N.M.C.M.R. 1981). It has also held that regulations that are integral to Congressional legislation and have penal ramifications must be strictly construed. United States v. Mersky, 361 U.S. 431, 4 L.Ed.2d 423, 80 S.Ct. 459 (1960). Whether the Marine Corps Order has penal ramifications because it is a regulation that implements departmental policy that is based on congressional legislation, see Department of Defense (DOD) Directive 6400.1, is not a question we address now; but the legal principle exists such that the facts we obtain from this decision may serve to resolve that issue.

## D. INITIAL CONCLUSIONS

Based on the foregoing, we conclude, first, that appellant raised no bar to prosecution at trial or on review. Second, the Marine Corps policy set forth in Marine Corps Order 1752.3A does not prohibit prosecution under the UCMJ of child sexual molestation or any other familial offense revealed through a described voluntary self-referral. Third, the Commandant's White Letter No. 2-88 does not prohibit the prosecution under the UCMJ of child sexual molestation or any other familial offense revealed through a described voluntary self-referral. Fourth, neither the policy nor the letter promise no prosecution if voluntary self-referral occurs. We therefore need not address the bar to prosecution issue that was present in United States v. Spence, 29 M.J. 630 (A.C.M.R. 1989) and the somewhat analogous case of Cooke v. Orser, 12 M.J. 335 (C.M.A. 1982). Those conclusions, however, are only adverse to appellant because the record does not show that appellant was promised he would not be prosecuted and therefore whether his conduct should be treated as an administrative matter under the provisions of MCO 1752.3A and the Commandant's White Letter No. 2-88 or as a criminal offense for prosecution under the UCMJ is solely a matter within the discretion of the convening authority.

Cf. United States v. Woods, 26 M.J. 372 (C.M.A. 1988). Fifth, the Commandant's White Letter incorporates MCO 1752.3A by requiring that commanders become familiar with the "applicable law and regulation" governing child abuse and the applicable procedures for commanders when such identification occurs. Only where a Marine has self-referred to authorities under a reasonable expectation that the government will not prosecute him for the offenses he may reveal, will this Court consider holding the Government to its word to abide by the agreement upon which the accused reasonably relied to his detriment. See Spence. 1/

The record contains no facts that show that the convening authority considered the policy set forth in the Marine Corps Order and the Commandant's White Letter when he took his action. We are required, however, by the remand to exercise our fact-finding powers to find facts that will provide answers to questions of law raised at the appellate level.

Accordingly, we set aside the convening authority's action. The record of trial is returned to the Judge Advocate General for remand to the convening authority who shall obtain a new staff judge advocate's recommendation, give an opportunity to defense counsel to respond to that recommendation pursuant to R.C.M. 1106(f), and then review the record of trial in light of Marine Corps Order 1752.3A and the Commandant's White Letter No. 2-88. In taking his de novo action pursuant to Article 60, UCMJ, the convening authority shall articulate the reasons the appellant does or does not fall under the terms of the Order and the White Letter. Additionally, if the convening authority determines that the appellant meets the criteria of the Order and the White Letter, and if he approves the

---

1/ Like the Air Force Court of Military Review in Spence, the Navy and Marine Corps as a result of policy promulgated from highest headquarters has tried to inform naval personnel of the problems of child abuse and to encourage the reporting and treating of child abuse, including encouraging voluntary self-referral by servicemembers who are abusers. Unlike the promises made in Cooke v. Orser, United States v. Churnovic, 22 M.J. 401 (C.M.A. 1986), and United States v. Spence, the encouragement for self-referral reflected in MCO 1752.3A and Commandant's White Letter No. 2-88 comes from the highest Marine Corps authorities and unless carefully and fully explained can be reasonably misinterpreted as to the consequences of self-referral. Unlike the appellant in Spence and the other analogous bar to prosecution cases, the issue in this case involves only the appropriateness of the sentence. We decide only that issue because the record does not contain facts sufficient to resolve any other issue and to raise the issue for the first time at this level is unacceptable, particularly in a case involving provident pleas of guilty. See generally United States v. Bartell, 32 M.J. 295 (C.M.A. 1991); Rule for Court-Martial 901(j), MCM.

punitive discharge adjudged, he shall articulate why under the terms of the Order and Letter appellant should not be retained and treated. If the convening authority considers facts, including affidavits from those involved, not contained in the record of trial, he shall identify those facts and attach the source of the facts to the record of trial. The convening authority shall ensure compliance with Rule for Courts-Martial 1107(h), Manual for Courts-Martial, United States, 1984. Upon completion of the convening authority's action, the record of trial shall be returned to this Court for further review in accordance with the mandate of the U.S. Court of Military Appeals.

E. M. ALBERTSON

Judge JONES and Judge LAWRENCE concur.

R. A. JONES

T. A. LAWRENCE